BRISCOE, Circuit Judge.
Defendant Brian Bass was convicted of five counts of knowing possession of child pornography, 18 U.S.C. § 2252A(a)(5)(B), and sentenced to 37 months imprisonment and three years of supervised release. On appeal, he contends (1) there was insufficient evidence to support the convictions, (2) the indictment was deficient, and (3) he is entitled to resentencing in light of the Supreme Court’s decision in United States v. Booker, 543 U.S.-, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). We exercise jurisdiction under 28 U.S.C. § 1291, affirm Bass’ convictions, but remand with directions to vacate his sentences and to resentence.
I.
Bass lived with his mother, Charlene Partovi, in Enid, Oklahoma. She owned a computer, which they both shared. In July 2002, the FBI learned that Bass was a member of an e-group entitled “Candy-man,” [1] and that based on this membership, he was likely to be in possession of child pornography. Tr. 46. Two agents went to Bass’ residence to speak with him, but he was not home. Four days later, the agents and a detective from the Enid Police Department returned and Bass and Partovi both consented to interviews.
Bass admitted to viewing child pornography on the internet and stated that at some point in the past the computer had a virus that saved such images. An officer asked “if he had ever purposely saved or downloaded or copied any of those images,” and Bass stated he had not. Tr. 48. Partovi stated that she had once inadvertently seen a pornographic image on the computer, and that Bass had removed the image at her request. She also gave written consent for the agents to take the computer and conduct a forensic search.
The Enid Police Department conducted the computer forensic search using two programs, “ENCASE” and “SNAGIT.” ENCASE recovered over 2000 images of child pornography, and SNAGIT recovered 39 images in the computer’s unallocated space, which the program changed from jpeg files (as they existed in Partovi’s computer) to .bmp or bitmap files. However, the origin of the images could not be identified — that is, whether the images had been intentionally or automatically saved to the computer from the internet. A file referencing “Candyman” and discussing how to remove information from a computer was also found in the unallocated space; however, again the source was undiscoverable. “Yahoo” and “Tropica” account names were found; the latter account was used to view child pornography websites. Software entitled “Window Washer” and “History Kill” was found, as well as evidence that Swanksoft.com (a site marketing History Kill) had been accessed in between the first two FBI visits to Bass’ house.
Bass was interviewed a second time after the computer search. Upon hearing the search findings, he admitted that he had a “morbid curiosity” with child por *1201 nography, and that he was intentionally viewing such material. Tr. 54. He also admitted he used Window Washer and History Kill to make sure his mother would not see the images he was viewing. However, he stated that he did not know (1) how to download images from the internet or (2) that the computer was automatically saving the images he viewed. In fact, Special Agent McLemore testified when Bass turned over the computer he stated “[h]e wasn’t worried, because he knew he had never saved any photographs to his hard drive.... ” Tr. 62.
Counts three and five of the indictment identified jpeg files and counts one, two, and four were images recovered by SNAG-IT and were identified as .bmp files. Bass moved for judgment of acquittal on each count arguing there was insufficient evidence to find knowing possession and that the indictment was defective because it identified file types that did not exist in the computer but rather were created by the SNAGIT software.[2] The district court denied the motion. Bass’ renewed motion at the close of the defense evidence was also denied.
II.

Sufficiency of the Evidence

At issue here is whether there was sufficient evidence presented to the jury to support Bass’ conviction of five counts of knowing possession of child pornography in violation of 18 U.S.C. § 2252(a)(5)(B).[3] Specifically, we must determine whether there was sufficient evidence presented for the jury to conclude beyond a reasonable doubt that Bass knowingly possessed the pornographic images which were found on the computer hard drive. With regard to the definition of possession, in United States v. Tucker, 305 F.3d 1193, 1204, (10th Cir.2002), this court stated:
The statute does not define possession, but in interpreting the term, we are guided by its ordinary, everyday meaning. [Citation omitted.] Possession is defined as “the holding or having something (material or immaterial) as one’s - own, or in one’s control.” Oxford English Dictionary (2d ed.1989); see also United States v. Simpson, 94 F.3d 1373, 1380 (10th Cir.1996) (defining “knowing possession” in drug context as encompassing situations in which an individual “knowingly hold[s] the power and ability to exercise dominion and control” over the narcotics.
“We review sufficiency of the evidence claims de novo, asking only whether, taking the evidence-both direct and circumstantial, together with reasonable inferences to be drawn therefrom-in the light most favorable to the government, a reasonable jury could find [Defendant] guilty beyond a reasonable doubt.” United States v. Allen, 235 F.3d 482, 492 (10th Cir.2000) (internal quotations omitted). “We do not question the jury’s credibility determinations or its conclusions about the weight of the evidence.” Id.
Bass contends this case presents the second question left unanswered by this court in Tucker-whether an individu *1202 al can be found guilty of knowing possession of child pornography under § 2252A(a)(5)(B) for viewing such images over the Internet while ignorant of the fact that the images are automatically stored on the computer. In Tucker, the defendant conceded he “knew that when he visited a Web page, the images on the Web page would be sent to his browser cache file and thus saved on his hard drive”; whereas Bass contends he did not know images were being automatically saved. Tucker, 305 F.3d at 1204. However, the jury here reasonably could have inferred that Bass knew child pornography was automatically saved to his mother’s computer based on evidence that Bass attempted to remove the images. There is ample evidence that Bass used two software programs, “History Kill” and “Window Washer,” in an attempt to remove child pornography from the computer. Bass admitted he had used both “History-Kill” and “Window Washer” to delete child pornography because “he didn’t want his mother to see those images.... ” ROA, Vol. II at 54. Both programs were installed on the computer when it was searched. Therefore, this case does not differ significantly from Tucker. In both cases, there was sufficient evidence of knowing possession of child pornography.

Sufficiency of the Indictment

Bass argues counts one, two, and four of his indictment were deficient because they identified images as .bmp files rather than jpeg files, as they existed in his computer.[4] We review indictment sufficiency on “practical rather than technical considerations.” United States v. Dashney, 117 F.3d 1197, 1205 (10th Cir.1997). “An indictment is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense.” Id.
The images identified in Bass’ indictment indisputably came from his computer. The only change that occurred was the file type identification, which was caused by the forensic examiner’s software. Otherwise, the numerical identification was identical to what existed in Bass’ computer, and each count included a description of the image involved. Thus, under a practical analysis, the indictment was sufficient to put Bass on notice of the charges against him.

Sentencing-Booker

Although Bass was convicted of knowingly possessing child pornography, the PSR recommended that he be sentenced pursuant to U.S.S.G. § 2G2.2, which governs offenses involving trafficking in child pornography.[5] ROA, Vol. 5, at 6. Section 2G2.2 establishes a base offense level of 17 for such trafficking offenses (as opposed to a base offense level of 15 imposed under *1203 § 2G2.4 for simple possession offenses). The PSR further recommended two upward adjustments to the base offense level: (1) two levels because the material involved prepubescent minors or minors under the age of twelve years; and (2) two levels because a computer was used for transmission of the material. Bass did not object to the factual allegations in the PSR and the district court adopted them as its own findings. See Fed.R.Crim.P. 32(i)(3)(A) (“At sentencing, the court ... may accept any undisputed portion of the presentence report as a finding of fact....”). As a result, Bass’ adjusted offense level was 21 with a sentencing range of 37-46 months (as compared to an offense level of 17 and a sentencing range of 24-30 months that would have resulted solely from the jury’s findings). The district court sentenced Bass to 37 months of imprisonment on each of the five counts, with the sentences to be served concurrently. In doing so, the district court acknowledged that friends and family members of Bass had written letters asking for leniency, but noted that, “[ujnder our form of sentencing,” it was “extremely limited in the amount of discretion that [it] ha[d].” ROA, Vol. 4, at 6.
While this case was pending on appeal, the Supreme Court issued its opinions in Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (1994), and United States v. Booker, 543 U.S. -, 125 S.Ct. 738, 755, 160 L.Ed.2d 621 (2005). In Blakely, the Court held that in a state prosecution the Sixth Amendment requires that the maximum permissible sentence in a particular case must be determined solely by reference to “facts reflected in the jury verdict or admitted by the defendant.” 124 S.Ct. at 2537. In Booker, the “Court extended the logic of Blakely to the Federal Sentencing Guidelines, holding that the Sixth Amendment requires that ‘[a]ny fact (other than a prior conviction) ... necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.’ ” United States v. Dazey, 403 F.3d 1147, 1174 (10th Cir.2005) (quoting Booker, 125 S.Ct. at 756). “To remedy this constitutional infirmity created by applying judge-found facts to mandatory sentencing guidelines, the Court severed the provision of the Sentencing Reform Act making application of the Guidelines mandatory.” Id.
Immediately following the issuance of Booker, we directed the parties to file supplemental briefs addressing the effect, if any, of Booker on Bass’ sentence. In his supplemental brief, Bass now contends the district court violated his Sixth Amendment rights by enhancing his sentence based upon judicially-found facts. Specifically, Bass complains that the district court improperly enhanced his sentence based upon its findings that (1) he engaged in trafficking, as opposed to mere possession, of child pornography, and (2) the material at issue involved prepubescent minors or minors under the age of twelve years.[6]
Because Bass did not raise these issues below, “we review the district court’s sentencing decision for plain error.” Id. To establish plain error, Bass “must demonstrate that the district court (1) committed error, (2) that the error was plain, and (3) that the plain error affected his substantial rights.” Id. “If all these conditions are met, a court reviewing the error may exercise discretion to correct it *1204 if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.” Id.
It is beyond dispute that the district court erred in sentencing Bass. As noted by Bass, the district court, applying the then-mandatory Guidelines, enhanced his sentence in two respects based upon judicially-found facts. First, it accepted as a finding of fact the PSR’s assertion that the offenses at issue involved trafficking in, rather than simple possession of, child pornography.[7] See Fed.R.Crim.P. 32(i)(3)(A). That finding in turn triggered the application of § 2G2.2, which required the imposition of a base offense level of 17 (as opposed to a base offense level of 15 for simple possession offenses). Second, the district court accepted as a finding of fact the PSR’s assertion that the material possessed (and allegedly trafficked in) by Bass “involved prepubescent minors or minors under the age of 12 years.” ROA, Vol. 5, at 6; see Fed.R.Crim.P. 32(i)(3)(A). This finding resulted in a two-level enhancement to Bass’ offense level pursuant to U.S.S.G. § 2G2.2(b)(1). In light of Booker, it is clear that “[t]his sentencing methodology violated [Bass’] Sixth Amendment rights.” Dazey, 403 F.3d at 1174.
Although the district court’s constitutional error was not “plain” at the time of Bass’ sentencing, it is the law at the time of the appellate decision that is relevant here. See Johnson v. United States, 520 U.S. 461, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (holding that “where the law at the time of trial was settled and clearly contrary to the law at the time of appeal&emdash; it is enough that the error be ‘plain’ at the time of appellate consideration.”). Thus, in light of Booker, the error is now plain. See Dazey, 403 F.3d at 1174-75 (reaching same conclusion in case involving Sixth Amendment violation).
The next question is whether the constitutional error- affected Bass’ substantial rights, i.e., whether it “affected the outcome of the district court proceedings.” United States v. Olano, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). In Dazey, we noted that in cases involving “constitutional Booker error,” a defendant can make this showing by demonstrating there is “a reasonable probability that a jury applying a reasonable doubt standard would not have found the same material *1205 facts that [the] judge found by a preponderance of the evidence.... ” 403 F.3d at 1175.
After reviewing the record on appeal, we conclude that Bass has made such a showing. Although the PSR asserted, and the district court in turn found, that the offenses at issue involved trafficking in, as opposed to mere possession of, child pornography, neither the PSR nor the district court offered a rationale for the finding, and there is little evidence in the record to support such a finding. To be sure, the government presented evidence at trial indicating that Bass had been identified by the FBI as a member of the e-group Can-dyman, and that numerous images of child pornography were found on Partovi’s computer. We are not persuaded, however, that such evidence, standing alone, would have been sufficient to allow a jury to find beyond a reasonable doubt that Bass was involved in the trafficking of child pornography. See generally Dazey, 403 F.3d at 1174 (noting that this analysis is conducted “less rigidly” in cases involving constitutional error).
The final question is whether, under the fourth prong of the plain error test, we should exercise our discretion to correct the district court’s plain error. We conclude there are least four reasons why we should do so. First, as noted, Bass’ “sentence was the result of a violation of his Sixth Amendment rights.” Dazey, 403 F.3d at 1178. Thus, from a procedural standpoint, the “plain error review burden” imposed on Bass is “less rigorous” than it would otherwise be in a case involving non-constitutional error. Id. Second, although we recently stated that “we are less likely to exercise our discretion to hotice constitutional Booker error where the defendant failed- to contest the judge-found facts on which the sentence was enhanced before the district court,” United States v. Dowlin, 408 F.3d 647, 671-72 (10th Cir.2005), we conclude this is a case where we should exercise our discretion to notice constitutional Booker error because of the complete lack of record support for the district court’s finding that Bass engaged in trafficking of child pornography. In particular, we note that the evidence presented at trial would not reasonably have allowed a finding of trafficking, and the PSR offered no explanation whatsoever for its conclusory assertion that Bass was subject to a trafficking-based enhancement. Third, the district court’s finding that Bass engaged in trafficking of child pornography increased Bass’ offense level by two points, which in turn had the effect of increasing the applicable guideline range from 30-37 months to 37-46 months.[8] See United States v. Villegas, 404 F.3d 355, 365 (5th Cir.2005) (concluding that, because district court’s error increased Guideline-suggested sentence by at least five months, the error seriously affected the fairness, integrity, or public reputation of judicial proceedings). Fourth, the district court imposed a sentence at the bottom of the 37-46 month guideline range, and there are indications in the sentencing transcript that it might have selected a lower sentence had it had the discretion to do so. ROA, Vol. 4, at 6 (“Under our form of sentencing, I am extremely limited in the amount of discretion that I have.”). Accordingly, “we believe this plain error warrants our exercise of discretion to remand the case” for resen-tencing. Dazey, 403 F.3d at 1179.
*1206 For the foregoing reasons, we AFFIRM Bass’ convictions, and REMAND with-directions to vacate his sentences and to resentence.

. "Candyman” was a "free Internet service that enabled interested people to collect and distribute child pornography and sexually explicit images of children.” United States v. Schmidt, 373 F.3d 100, 101 (2d Cir.2004). See also United States v. Perez, 247 F.Supp.2d 459, 463-65 (S.D.N.Y.2003) (in-depth description of the Candyman e-group). The FBI began investigating this group in 2001 in what has been termed "Operation Candy-man.” United States v. Fantauzzi, 260 F.Supp.2d 561, 562-63 (E.D.N.Y.2003).

. SNAGIT is a screen capturing program which takes a snapshot of images recovered from the unallocated clusters of a computer. The program's default setting is to save these snapshots as .bmp files rather than jpeg files.

.
Any person who-knowingly possesses any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer ... shall be punished as provided in subsection (b).
18 U.S.C. § 2252A(a)(5)(B).

. Counts one, two, and four of the indictment identified .bmp files. In his argument to the district court, Bass argued that counts one, two, four, and five were deficient. Tr. 158. However, we assume he meant counts one, two, and four.

. Although the PSR recommended the application of § 2G2.2, it did not offer any factual basis for doing so. Instead, the PSR simply stated as follows:
Base Offense Level: The United States Sentencing Commission guideline for violation of 18 U.S.C. § 2252A(a)(5)(B) is found in USSG § 2G2.4. The cross reference to that section indicates that if the offense involved trafficking in material involving the sexual exploitation of a minor (including receiving, transporting, shipping, advertising, or possessing material involving the sexual exploitation of a minor with intent to traffic), apply USSG § 2G2.2. Pursuant to that section, the base offense level [for Bass] is 17.
ROA, Vol. 5, at 6. No other mention is made in the PSR of Bass having trafficked in child pornography.

. Although the district court also imposed a two-level enhancement based upon Bass’ use of a computer in the offenses of conviction, that enhancement was supported by the jury's factual findings.

. Prior to Booker, we regularly held that the "[failure to object to a fact in a presentence report, or- failure to object at the [sentencing] hearing, acts as an admission of fact.” United States v. Deninno, 29 F.3d 572, 580 (10th Cir.1994). Whatever the remaining validity of this precedent may be, we are unwilling to conclude that Bass’ failure to object operated as an "admission of fact” for purposes of the rights announced in Booker. In other words, we are unwilling to say that Bass’ failure to object resulted in a waiver of the Sixth Amendment requirement to "prove[ ] to a jury beyond a reasonable doubt” that he was involved in trafficking of child pornography. Booker, 125 S.Ct. at 756. See generally United States v. Olano, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (noting that a waiver involves the intentional relinquishment of a known right); Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) (noting that, in order for a waiver to be valid, the party who "waives” must have some degree of personal awareness of what is being relinquished, and the relinquishment must be a matter of personal choice). In reaching this conclusion, we emphasize that this case is distinguishable from United States v. Green, 405 F.3d 1180 (10th Cir.2005), and United States v. Hahn, 359 F.3d 1315 (10th Cir.2004), where we held that the decisions in Booker and Blakely did not render the defendants' prior voluntary waivers of their appellate rights in plea agreements unknowing or involuntary. More specifically, defendant Bass simply failed to object to a factual allegation in a presentence report, whereas the defendants in Green and Hahn, as part of their respective plea agreements, signaled their intent generally to waive their constitutional rights, including the right to appeal their sentences.

. As previously noted, the district court’s finding that the material involved prepubescent minors or minors under the age of twelve years resulted in a two-level increase to Bass’ offense level and a corresponding increase- in his guideline range. Setting aside this enhancement in addition to the trafficking-based enhancement would have resulted in an offense level of 17 and a guideline range of 24-30 months.