THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICHARD SCOLARO, Defendant-Appellant.

First District (5th Division)   No. 1—06—3144

Opinion filed May 29, 2009.

Michael J. Pelletier and Marion Buckley, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (James E. Fitzgerald and Mary L. Bolan, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE FITZGERALD SMITH delivered the opinion of the court:

Following a bench trial, defendant Richard Scolaro was found guilty of possession of child pornography and sentenced to 12 months' probation. On appeal, defendant argues that the State failed to find him guilty of possession of child pornography beyond a reasonable doubt. For the following reasons, we affirm.

## I. BACKGROUND

This case originated from an international investigation, instigated by the Department of Homeland Security (DHS), of Internet child pornography. DHS obtained subscriber information from numerous child pornography Web sites, including names, addresses, telephone numbers, IP addresses, e-mail addresses, and credit card numbers. Special Agent Kevin Gerlock testified at trial that his investigation identified defendant as a subscriber. The information was then sent to Westchester, Illinois, police.

Westchester police detective Dominick Luciano testified that on February 2, 2004, at approximately 9:40 a.m., he went to defendant's residence. Luciano told defendant that he was "investigating inappropriate images on the Web that may be on his computer," and asked if defendant would allow him to enter his house. Defendant acquiesced. Luciano asked if he could conduct "an image scan on his computer, which would pull images off his computer and let [police] view them." Defendant agreed, and at 9:46 a.m. he signed a consent form authorizing Luciano "of the Westchester Police Department or their agents, to conduct a complete search" of his computer.

Luciano then installed a flash drive, which is an external USB drive that plugs into the back of the computer. Using software called "ImageScan," developed and owned by the Federal Bureau of Investigation, Luciano attempted to "pull" images of child pornography from defendant's hard drive. When Luciano booted up defendant's computer, it froze. On a second try, the program started to produce certain nonpornographic images, but would not allow access to certain folders on the computer, so Luciano sought defendant's permission to send it out for a forensic examination. Defendant agreed. In addition to the computer, police officers confiscated pornographic videos and discs, none of which contained child pornography. According to Luciano, defendant told the officers that he "had viewed images, but had never saved any on his computer." The police officers then left defendant's house.

Defendant later voluntarily arrived at the police station asking to speak to Luciano. He was advised of his *Miranda* rights and taken to an interview room. Defendant advised Luciano of his background, which Luciano "pretty much already knew"—that he had worked for the park district for 20 years; coached baseball for 19 years; was a volunteer for a community church; and that he sold nutritional supplements as his main source of income. Defendant told Luciano that he subscribed to five Web sites that had child pornography on them. He sometimes previewed the images before he subscribed to the sites. Defendant believed the individuals he was viewing to be between 8 and 16 years of age.

Defendant told Luciano that the images he observed were of children "clothed. Some were naked. Some were kissing, some were holding. Some were posing." Defendant said when he viewed the pictures, he became aroused. He said he had never had any contact with any child, that he would never do that, and that his life depended on coaching and being around children. According to Luciano, defendant told him that in the past, he had received e-mails containing child pornography and that, on some occasions, he had forwarded them and sent them out as well.

Luciano testified that federal agents produced 12 images from defendant's computer. Assistant State's Attorney (ASA) Kathy Muldoon was then called and an interview took place between her and defendant, for which Luciano was present. Defendant then opted to give a handwritten statement.

In his handwritten statement, defendant averred that in February of 2002 he began visiting Web sites containing child pornography. The Web sites required a subscription or payment to join and view the images. Defendant used a credit card to make the payments, which were

between $29 and $49 a month. He remembered the names of four out of the five Web sites he joined: Virgin X Boys, Sunrise Boys, Boys-Are-Us, and Charming Boys. Defendant stated that he would see a preview of the Web sites and then be directed to a different screen, where he would give his credit card information. Defendant was shown the 12 images taken from his computer, and he stated that he recognized the pictures as ones he viewed on the Web sites that he had paid for with his credit card. Defendant also admitted that he had been in chat rooms and instant-messaged individuals, and that some of those individuals sent him pictures. Defendant admitted that he sometimes sent a picture he had received from someone else to other people and that such pictures were of young boys, fully naked.

On cross-examination, ASA Muldoon stated that she never asked defendant whether he saved or deleted anything from the Web sites he visited, and if defendant had provided such information, it would have been included in his statement.

DHS Special Agent Jarrod Winkle performed a presearch of defendant's computer using a program called "EnCase," which is designed to perform complete forensic analysis on computers and/or computer-type equipment, or media, without altering the computer media itself. Winkle found a program on defendant's computer hard drive called "Evidence Eliminator," which is a program designed to eliminate files and/or evidence from a computer. Using EnCase, Winkle was able to obtain and recover some of the deleted computer files. Winkle found 689 images of child pornography in the unallocated section of defendant's computer hard drive and 1 image in a temporary file. The unallocated section of a hard drive is considered the "free space" of the hard drive and is the area to which computer data or images are sent, sometimes automatically, by the Web site the user is visiting.

On cross-examination, Winkle admitted that he was not aware of the version of Evidence Eliminator on defendant's computer and that it could be used to remove benign programs or spam from a computer's hard drive. Winkle testified that an Internet cache exists to speed up access and that a temporary file is created to hold the various Web pages so they can load faster. Winkle recovered images of the front pages of various Web sites from defendant's computer and admitted that, from the images of the front pages, it did not appear that there were people engaged in sex acts. Winkle testified that when the 689 file images were deleted, the date on which they were viewed was lost as the images moved to the unallocated cache space on the hard drive. He could not say whether defendant intentionally deleted files. It is possible that the images could have come from one Web site or could

have been attached to an e-mail. Winkle further testified that it was possible that the files could have been deleted without the user knowing that they remained on the unallocated Internet cache. Winkle further explained that a temporary directory may be created by the user or by the operating system of the computer and is used to store temporary files.

At the conclusion of the State's case-in-chief, defendant moved for a directed verdict, arguing in part that there was no knowing possession of the images. The trial court denied defendant's motion. Defendant rested his case. The trial court found defendant guilty of possession of child pornography.

In his posttrial motion, defendant argued that it is not a crime to go on a Web site and view child pornography and that he did not knowingly possess child pornography. The State responded that defendant sought out this material and used his credit card to subscribe to certain child pornography sites, which demonstrated knowing possession. The trial court denied the motion and sentenced defendant to 12 months' probation and admonished him to register as a sex offender. Defendant now appeals.

## II. ANALYSIS

On appeal, defendant argues that the State failed to prove him guilty of the offense of child pornography beyond a reasonable doubt. Specifically, defendant argues that the State failed to prove that he "possessed" child pornography within the meaning of the statute because (1) no evidence was presented that he ever downloaded, saved, printed, or in any other way exerted control over the images, and (2) no evidence was presented that he knew such images existed on his computer.

When reviewing a sufficiency of the evidence in a criminal case, our proper standard of review is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *People v. Collins*, 106 Ill. 2d 237, 261 (1985).

■ Defendant was charged with child pornography pursuant to section 11—20.1(a)(6) of the Criminal Code of 1961 (720 ILCS 5/11—20.1 (West 2004)), which states that a person commits the offense of child pornography when that person, with knowledge of the nature or content thereof, possesses any film, videotape, photograph or other similar visual reproduction or depiction by computer of any child whom the person knows or reasonably should know to be under the age of 18, engaged in any activity described in the subparagraphs of paragraph (1) of the subsection. The statute further states that the

charge of child pornography "does not apply to a person who does not voluntarily possess a *** depiction by computer in which child pornography is depicted. Possession is voluntary if the defendant knowingly procures or receives a *** depiction for a sufficient time to be able to terminate his or her possession." 720 ILCS 5/11—20.1(b)(5) (West 2004). Accordingly, the State had to prove that defendant knowingly possessed child pornography in the cache folder of his computer.[1]

Courts have come to varying conclusions, however, in determining what "possession" means in the context of computer images. While some jurisdictions, in both state and federal court, have had occasion to address the specific issue presented by this case, *i.e.*, whether an individual can be in possession of pornographic materials when he or she has viewed the pornographic materials on a computer screen but has not copied or saved those files to the computer, Illinois has not. Thus, we have looked to other jurisdictions for guidance.

In *United States v. Tucker*, 305 F.3d 1193 (10th Cir. 2002), the United States Court of Appeals for the Tenth Circuit addressed the issue of whether a defendant could be convicted of possessing child pornography when he had viewed the prohibited images on his computer but did not save or download the images to the hard drive on his computer. The court stated:

> "Tucker maintains that he did not possess child pornography but merely viewed it on his Web browser. He concedes, however, that he knew that when he visited a Web page, the images on the Web page would be sent to his browser cache file and thus saved on his hard drive. Yet, Tucker contends that he did not desire the images to be saved on his hard drive and deleted the images from his cache file after each computer session. There is no merit to this argument.
>
> 18 U.S.C. §2252A(a)(5)(B) provides that any individual who
> > 'knowingly possesses any book, magazine, periodical, film, videotape, computer disk, or any other material that contains 3 or more images of child pornography that has been ... transported in interstate ... commerce ... shall be punished.'
>
> The statute does not define possession, but in interpreting the term, we are guided by its ordinary, everyday meaning. See *Johns*

---

[1]A cache is a storage mechanism designed to speed up the loading of Internet displays. When a user views a Web page, the Web browser stores a copy of the page on the computer's hard drive in a folder or directory. The folder is known as the "cache," and the individual files in the cache are known as "temporary Internet files." See T. Howard, *Don't Cache Out Your Case: Prosecuting Child Pornography Possession Laws Based on Images Located in Temporary Internet Files*, 19 Berkeley Tech. L.J. 1227, 1229-30 (2004).

*v. Stewart*, 57 F.3d 1544, 1555 (10th Cir. 1995). Possession is defined as 'the holding or having something (material or immaterial) as one's own, or in one's control.' Oxford English Dictionary (2d ed. 1989); *see also United States v. Simpson*, 94 F.3d 1373, 1380 (10th Cir. 1996) (defining 'knowing possession' in drug context as encompassing situations in which an individual 'knowingly hold[s] the power and ability to exercise dominion and control' over the narcotics (quotation omitted)). Tucker contends that because he did not personally save, or 'download,' the images to his hard drive, he had no control over them. We agree with the district court, however, that Tucker had control over the files present in his Web browser cache files.

Customs Agent Daufenbach testified that an individual could access an image in a cache file, attach it to an email, post it to a newsgroup, place it on a Web site, or print a hard copy. He stated, 'Just like as with any other data file, you could do almost anything with it.' Agent Hooper similarly testified that an individual could 'view [an image in the cache]. He could rename it. He could copy it to a floppy disk. He could email it to somebody. He could modify the file.... Anything he could do with any other file he could do with these files.' This unrebutted testimony conclusively demonstrates Tucker had control over images stored in his cache and thus possessed them." *Tucker*, 305 F.3d at 1204-05.

The court in *Tucker* went on to find that Tucker "intentionally sought out and viewed child pornography knowing that the images would be saved on his computer." *Tucker*, 305 F.3d at 1205. The court found that Tucker may have wished that his Web browser did not automatically cache viewed images on his computer's hard drive, but he conceded that he knew the Web browser was doing so, and thus Tucker was viewing child pornography with the knowledge that the pornography was being saved, if only temporarily, on his computer. *Tucker*, 305 F.3d at 1205. Other courts have agreed with the reasoning in *Tucker*. See *United States v. Romm*, 455 F.3d 990, 998 (9th Cir. 2006) ("in the electronic context, a person can receive and possess child pornography without downloading it, if he or she seeks it out and exercises dominion and control over it."); *State v. Lindgren*, 2004 WI App. 159, 275 Wis. 2d 851, 687 N.W.2d 60 (adopted the *Tucker* court's reasoning).

In the case at bar, defendant sought out the images he viewed by subscribing to certain Web sites, yet he claims he had no knowledge of the fact that images were being saved in his cache folder on his computer. However, other jurisdictions have held that an individual's lack of knowledge is not fatal to a charge of possessing child pornography.

In *Commonwealth v. Simone*, 63 Va. Cir. 216 (2003), a Virginia circuit court, citing *Tucker*, disagreed with Simone's argument that he could not be convicted of possessing child pornography because the images were only found on Simone's "computer cache." The court stated:

> "In the present case the defendant did not testify, and no direct evidence was presented, as to whether he realized images he viewed were being saved to his cache file.
>
> \*\*\*
>
> In deciding whether the defendant knowingly possessed the cached images in this case, the Court finds it helpful to analogize possession via the computer to other methods of possession. However, the starting point for such an examination must be the language of the statute. The Virginia statute does not prohibit viewing, it prohibits possession. The Virginia Supreme Court has recognized that the word 'possession' has 'many various meanings.' (Citation omitted)." *Simone*, 63 Va. Cir. at ___.

The court synthesized several definitions of "possession" in the computer context and found that the ultimate question is whether the defendant reached out for and controlled the images at issue. *Simone*, 63 Va. Cir. at ___. The court further stated:

> "By analogy, one might consider the following hypothetical. If a person walks down the street and notices an item (such as child pornography or an illegal narcotic) whose possession is prohibited, has that person committed a criminal offense if they look at the item for a sufficient amount of time to know what it is and then walks away? The obvious answer seems to be 'no.' However, if the person looks at the item long enough to know what it is, then reaches out and picks it up, holding and viewing it, and taking it with them to their home, that person has moved from merely viewing the item to knowingly possessing the item by reaching out for it and controlling it. In the same way, the defendant in this case reached out for prohibited items and, in essence, took them home." *Simone*, 63 Va. Cir. at ___.

The *Simone* court went on to find that there were several other pieces of evidence in the case that provided convincing indicia of knowing possession. The court found that the Internet searches performed by the defendant showed that he was reaching out for images involving child pornography, such as "Lolitas," which is a common term in the search for child pornography according to the testimony presented at trial. *Simone*, 63 Va. Cir. 216. Ultimately, the court found that all the evidence combined showed beyond a reasonable doubt that defendant reached out for these images with the intent to control and have dominion over them. *Simone*, Va. Cir. 216.

In the case at bar, defendant admitted to subscribing to certain Web sites that depicted child pornography, such as Virgin X Boys, Sunrise Boys, Boys-Are-Us, and Charming Boys. We find this evidence to be further convincing indicia of knowing possession in that defendant reached out and exercised control over the images within such Web sites. See also *State v. Mobley*, 129 Wash. App. 378, 385, 118 P.3d 413, 416 (2005) (the issue of possession in the context of computer images concerns whether the defendant "reached out for and exercised dominion and control" over the images); *Romm*, 455 F.3d at 998 (defendant exercised dominion and control over images in his cache by enlarging them on his screen and saving them there for five minutes before deleting them. While the images were displayed on defendant's screen and simultaneously stored in his laptop's hard drive, he had the ability to copy, print, or e-mail the images to others. Thus, evidence of control was sufficient to find that defendant possessed and received the images in his cache).

Finally, in *United States v. Bass*, 411 F.3d 1198 (10th Cir. 2005), a divided panel of the Tenth Circuit upheld a conviction for possessing child pornography in the Internet cache where the defendant claimed ignorance of the browser's caching function. Unlike in *Tucker*, where the defendant conceded his knowledge of the caching function, the defendant in *Bass* claimed that a computer virus caused his browser to save child pornography without his knowledge. *Bass*, 411 F.3d at 1200. The court ultimately found, however, that the jury could have inferred that the defendant knew child pornography was automatically saved to his computer based on evidence that defendant attempted to remove the images. *Bass*, 411 F.3d at 1202. Namely, there was ample evidence that the defendant used two software programs, "History Kill" and "Window Washer," in an attempt to delete child pornography. The court concluded that because both programs were installed on his computer when it was searched, there was sufficient evidence that defendant knew the images were being automatically saved. *Bass*, 411 F.3d at 1202.

Illinois's child-pornography statute does not define "possess." However, as both parties note in their briefs, where a term is not defined by the legislature, the "undefined terms in a statute shall be given their ordinary and popularly understood meanings." *People v. Ward*, 215 Ill. 2d 317, 325 (2005). "Possession" has been defined in Illinois as "[t]he fact of having or holding property in one's power; the exercise of dominion [or control] over property." Black's Law Dictionary 1201 (8th ed. 2004); see also *Romm*, 455 F.3d at 999. See also *People v. Huth*, 45 Ill. App. 3d 910, 915 (1977) (to prove possession in a drug context, the State must "establish beyond a reasonable

doubt not only that the accused had knowledge of the presence of contraband, but also that the contraband was in the accused's possession and control"). Accordingly, after considering Illinois's definition of possession in relation to computer images, we believe that the question becomes: Did defendant specifically seek out the prohibited images and did he have the ability to exercise dominion and control over these images?

■ Here the record shows that the child pornography was saved as temporary files on defendant's home computer. Defendant "reached out" for images by subscribing to Web sites that contained images of child pornography. Defendant admitted to forwarding images to others and receiving images of fully naked boys. Even if there had been no indication in the record that defendant had copied, printed, e-mailed, or sent images to others, defendant had the ability to do so when he was viewing the downloaded Web pages. See *Ward v. State*, 994 So. 2d 293, 301 (Ala. Crim. App. 2006). Furthermore, law enforcement officers found the program "Evidence Eliminator" installed on defendant's computer, which indicates that defendant knew the images were being automatically saved on his computer. See *Bass*, 411 F.3d at 1202. When viewing this evidence in the light most favorable to the prosecution, we find that the State proved that defendant had dominion and control over the images found in his cache and, therefore, that he "possessed" child pornography within the meaning of the statute.

### III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

O'MARA FROSSARD and TOOMIN, JJ., concur.