CAVANAGH, J.
{concurring in part and dissenting in part). I respectfully dissent from the majority’s conclu *27 sion that intentionally accessing and purposely viewing prohibited images on the Internet amounts to knowing possession of those images under MCL 750.145c(4). Accordingly, I would affirm the circuit court’s decision to grant defendant Douglas Lazarus’s motion to quash, and I would remand defendant Steven Flick’s case to the circuit court for further proceedings consistent with this opinion.
I. ADDITIONAL FACTUAL BACKGROUND
It is important to understand the significance of the presence of temporary Internet files (TIFs) and deleted TIFs on a computer. When a computer user visits a website, the computer performs two functions simultaneously: (1) it opens and displays the website, and (2) without any indication to the user, it automatically creates TIFs containing copies of the images and other data that the computer must download in order to display the website. Note, Possession of child pornography: Should you be convicted when the computer cache does the saving for you?, 60 Fla L R 1205, 1213-1214 (2008). As the prosecution’s expert, Detective Joshua Edwards, testified, computers are set by default to automatically delete TIFs after a certain number of days. See also id.[1] Thus, unless a user is savvy enough to *28 be aware of this process and change the computer’s default settings, TIFs are constantly being saved to the computer’s hard drive when a user visits a website, and later deleted, without any action from or indication to the user. [2] Further, as Detective Edwards testified, both TIFs and the deleted TIFs may remain on the computer’s hard drive and can be accessed by someone with expertise on how to do so. But the average computer user does not know how to access TIFs or the deleted TIFs.[3] Id. See also United States v Kuchinski, 469 F3d 853, 862 (CA 9, 2006). Therefore, it cannot necessarily be inferred from the presence of TIFs on a computer that the computer user knew of the TIFs’ presence or manually accessed the TIFs or intended to do so. Further, it also cannot necessarily be inferred from the presence of deleted TIFs on a computer that the computer user manually deleted the files.
The majority misleadingly characterizes some of the relevant facts in these cases to buttress its statement that the defendants did more than “passively view” prohibited images.[4] As noted by the majority, both *29 defendants admitted that they had intentionally paid for access to child pornography websites and knowingly viewed prohibited images online at those websites. TIFs of prohibited images and “deleted” prohibited images were found on their computer hard drives.[5] The majority also implies, however, that defendant Flick actively deleted prohibited images and relies on this to support its argument that defendant Flick did more than passively view prohibited images.[6] Contrary to this assertion, there is no evidence in the record before this Court that either defendant was aware of the TIFs, had accessed the TIFs, or had manually or intentionally deleted TIFs or any other files with prohibited images. Additionally, while there was no allegation that defendant Lazarus had knowingly saved any prohibited images to his computer or accessed TIFs while they were on his hard drive, the majority argues that defendant Lazarus did more than “passively view” images because someone could have accessed the TIFs on his hard drive that his computer automatically created. But, as discussed above, the average computer user is not aware of *30 TIFs and cannot access them, and there was no evidence that defendant Lazarus had done so or knew how to do so. Thus, I do not think the fact that TIFs are theoretically accessible provides any support for the statement that defendant Lazarus did more than “passively view” prohibited images.
Finally, I note that while the prosecution alleged that defendant Flick told a police officer that he had “downloaded” prohibited images, it is unclear from the record before this Court whether defendant Flick admitted that he had actively saved images to his hard drive. Alternatively, he may have merely admitted that his computer had transferred images to his screen for viewing without his actively saving any images.[7] At best, however, the facts pertaining to defendant Flick are identical to defendant Lazarus’s, given that he admitted intentionally accessing and viewing prohibited images on websites.
II. LEGAL ANALYSIS
In addition to disagreeing with the majority’s factual assertions, I also disagree with some of its legal analy *31 sis. Under MCL 750.145c(4), it is a felony for a person to knowingly possess child sexually abusive material. In these cases, it is undisputed that defendants Flick and Lazarus knowingly accessed and viewed child sexually abusive material on their computer screens and that their computer hard drives contained TIFs of child sexually abusive material. The legal question before the Court is therefore whether intentionally accessing and knowingly viewing prohibited images on the Internet constitutes “possession” of these images. The majority holds that it does. I disagree.[8]
As correctly noted by the majority, because “possess” is a word with a unique legal meaning, it should be interpreted according to its meaning under the common law. Dennis v Robbins Funeral Home, 428 Mich 698, 703; 411 NW2d 156 (1987). As further noted by the majority, this Court has held that there are two types of possession: actual and constructive. People v Wolfe, 440 Mich 508, 520; 489 NW2d 748 (1992). Given this well-established law, I also agree with the majority that either actual or constructive possession of prohibited images would be sufficient to satisfy MCL 750.145c(4). It is clear that viewing images on a website does not constitute actual, or physical, possession, and thus the issue is whether intentionally accessing and knowingly viewing prohibited images amounts to constructive possession.
*32 I generally agree with the majority that, under Michigan law, in order to constitute constructive possession, an ability to exercise dominion and control, without an actual exercise of dominion and control, is sufficient only when the person has the power and the intent to exercise dominion or control. See People v Konrad, 449 Mich 263, 273; 536 NW2d 517 (1995), concluding that the defendant constructively possessed drugs because “he had the intention and power ... to exercise control over them,” and People v Hill, 433 Mich 464, 470; 446 NW2d 140 (1989), stating that “a person has constructive possession if he ‘knowingly has the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons,’ ” quoting United States v Burch, 313 F2d 628, 629 (CA 6, 1963).[9] I disagree with the majority, however, on what constitutes constructive possession in this context.
Specifically, I disagree with the majority’s application of the power and intention standard to this case. The majority equates exercising dominion and control, in this context, with a list of actions that a person might take to actively interact with the viewed image, includ *33 ing printing, resizing, saving, sharing, posting, e-mailing, or deleting it. It therefore concludes that these defendants constructively possessed prohibited images because they intentionally accessed and viewed the images on a website and, at that point, “knowingly had the power and the intention to exercise dominion or control” over the pictures because they could print, save, e-mail, etc., the images. In other words, the majority does not argue that accessing and viewing the prohibited images constituted an actual exercise of dominion or control. Instead, it argues that because defendants intentionally accessed and viewed the images, defendants must have also had the power and intention to take an additional action to exercise dominion and control, such as saving or e-mailing the images.
This argument has one fatal flaw: while defendants clearly had the power to exercise dominion and control over the prohibited images, the majority fails to explain what support there is for its conclusion that defendants intended to do so. There is no evidence to support this conclusion, at least with regard to defendant Lazarus.[10] Thus, the majority is apparently holding that an intention to exercise dominion and control over prohibited images on a computer screen can be inferred whenever a defendant simply has the power to do so. I do not think that this is a reasonable inference, as it is a giant, and clearly erroneous, logical leap to assume that every time a person intentionally accesses and views images *34 on a website, that person intends to save, print, e-mail, or otherwise exercise dominion and control over those images. Indeed, one could imagine many reasons that a person might view an image on a screen but not intend to save, print, e-mail, or otherwise interact with the image.[11]
Moreover, the foreign authority that the majority offers in support of its conclusion that knowingly accessing and viewing prohibited images is knowing possession is inapposite. The majority quotes Ward v State, 994 So 2d 293, 299-300 (Ala Crim App, 2007), an Alabama Court of Criminal Appeals case that concluded that intentionally accessing and viewing an image on a website constitutes constructive possession. The Alabama Court analogized the situation to knowingly viewing drugs on the street and then intentionally picking them up and carrying them home. Id. The Alabama case is irrelevant to Michigan law, however, because Alabama has a different, and much broader, standard for constructive possession: whether the person had the ability to exercise dominion and control. Id. at 301-302. If Alabama law governed in these cases, I would agree that defendants had constructive possession of the images because they had the ability to exercise dominion and control over them. As discussed, however, the definition of constructive possession in Michigan is stricter and requires not merely the ability to exercise dominion and control but also the power and the intention to do so. The majority’s reliance on this case demonstrates its refusal to acknowledge the difference *35 between having the ability, or the power, to exercise dominion and control and having the power and the intention to do so.
Furthermore, the analogy from the Alabama case on which the majority relies is wholly irrelevant to these cases. The majority claims that the facts of these cases are comparable to a person viewing drugs and then carrying them home, because both demonstrate “the many intentional affirmative steps taken by the defendant to gain actual physical control, or to knowingly have the power and the intention at a given time to exercise dominion or control. .. When a person physically carries drugs home, however, the person unquestionably has actual, physical possession of the items. Thus, the inquiry is very different from the one required hy the facts of these cases, which involve not actual possession but rather constructive possession.
In contrast, as the Prosecuting Attorneys Association of Michigan amicus curiae brief concedes, the federal courts of appeals have generally not held that accessing and viewing child pornography, even with the presence of TIFs, could constitute knowing possession when interpreting equivalent language in the federal statute.[12] Only one circuit has been directly confronted with the question whether intentionally viewing and accessing images constituted possession, and it held that a defendant did not possess images merely because he viewed them on a screen and TIFs were consequently found on his hard drive. Kuchinski, 469 F3d at *36 861-863.[13] Further, while most other federal courts of appeals have not addressed the exact issue presented in this case, they have consistently found intentionally accessing and knowingly viewing images on the Internet, and/or the presence of TIFs, to rise to the level of possession only when some other factor demonstrates that the defendant actually exercised dominion or control over the images, such as evidence that the defendant manually saved or deleted the images to or from his computer. See, e.g., United States v Romm, 455 F3d 990, 998 (CA 9, 2006), stating that “[i]n the electronic context, a person can receive and possess child pornography without downloading it, if he or she seeks it out and exercises dominion and control over it,” and holding that the defendant had exercised dominion and control where he admitted that he viewed and enlarged images, saved them to his hard drive, and then deleted them.[14]
In summary, with regard to defendant Lazarus, I would hold that there was no evidence supporting a *37 charge of knowing possession under MCL 750.145c(4) because there is no evidence that he actually exercised, or intended to exercise, dominion and control over the prohibited images he was viewing. With regard to defendant Flick, I would remand to the trial court to reconsider whether defendant’s admission is admissible, and, if it is, whether it is evidence that defendant Flick actually exercised, or intended to exercise, control and dominion over prohibited images.[15]
III. CONCLUSION
I dissent from the majority’s conclusion that defendants knowingly possessed prohibited images merely by intentionally accessing and purposely viewing those images on the Internet. Accordingly, I would affirm the district court’s ruling that defendant Lazarus could not be bound over for trial, and I would remand defendant Flick’s case for further proceedings consistent with this opinion.
Kelly, C.J., and Hathaway, J., concurred with Cavanagh, J.

 Detective Edwards agreed that “computers come from the factory” with default settings to “take images from web pages to the temporary Internet file” and that a user is “not in control of what [the user’s] computer takes an image of and sends to [the] temporary Internet file.” He further testified that a computer user does not have to do something proactive for a temporary Internet file to end up in deleted, or unallocated, space because “[t]he settings can be set to delete those files every 30 days, every 180 days, and that’s — the computer can delete those automatically for you.” He explained that these default settings can be changed and altered, but he also agreed that there “are always default settings” for the temporary Internet files to be deleted. As noted by the majority, Detective Edwards did testify that some “proactive measure” *28 would have to be taken for a temporary Internet file to be on a computer’s hard drive, but he did not specify what that proactive measure is. Given that he also testified that computers “come from the factory” with default settings to automatically create temporary Internet files, it appears that the “proactive measure” he was referencing was viewing a website, not actively saving TIFs to a computer.

 Thus, although a computer user may intentionally access and view a website, under a computer’s default settings, it is the computer, not the user, that creates and deletes the TIFs.

 Even after a file has been “deleted,” it may be accessible to a user with the proper software and expertise. This is because “deleted” files remain in a computer’s unallocated space until they are replaced with another file. Detective Edwards analogized this to a television show recorded on VHS tape that a person has decided not to keep but has not yet taped over.

 It appears that these factual errors would not affect the majority’s ultimate conclusion because the majority concludes that purposely ac *29 cessing and viewing prohibited images on a computer screen is, by itself, sufficient to establish possession. I am unsure, however, why the majority finds it necessary to artificially buttress its analysis with misleading factual characterizations if it is truly concluding that knowingly accessing and intentionally viewing images is sufficient to establish possession.

 Although the majority discusses deleted images only in the context of defendant Flick, Detective Edwards testified that defendant Lazarus also had prohibited images on his “unallocated,” i.e., deleted, space.

 For example, the majority opinion states, “Defendant Flick’s admission that he downloaded child sexually abusive material, coupled with [the expert’s] report that images of child sexually abusive material had been deleted, sufficiently establishes that at a minimum defendant Flick knowingly had the power Bind the intention to exercise dominion or control” over the prohibited images, and “a defendant cannot intentionally procure and subsequently dispose of a depiction of child sexually abusive material without having either actual or constructive possession.”

 The confusion arises because the term download has multiple meanings. It is often used to refer to actively saving a copy of a file to a computer’s hard drive, see Note, Possession of child pornography, supra at 1211, but, as the prosecution acknowledged in its brief to this Court, it also can more generally refer to sending files electronically from one computer to another, as is necessary to view a website. It is unclear which meaning defendant intended in his statement because, during the hearing on the motion to quash, defendant Flick’s counsel stated, without contradiction from the prosecution, that defendant had never e-mailed, printed, or saved any prohibited images to his computer. Consistent with this, in response to the motion to quash, the prosecution focused on the argument that paying to view images is sufficient for possession, stating that “|j]ust because the individual chooses not to save the images does not mean that they were not possessed by the purchaser at the time of purchase.”

 Justice Corrigan’s concurrence also addresses whether the presence of TIFs on a computer’s hard drive, alone, establishes “knowing possession” and whether TIFs are circumstantial evidence of previous possession. As to the first issue, I generally agree that the presence of TIFs on a hard drive, alone, does not establish knowing possession, given that computers automatically create and delete TIFs, and, as discussed above, the average computer user is unaware of TIFs or how to exercise dominion and control over them. As to the second issue, it is unnecessary to reach it in these cases.

 The majority opinion generally agrees with this statement, and cites Konrad, Hill, and Burch, but, confusingly, it also states at one point that “a person who has the power to exercise a degree of dominion or control over ‘any child sexually abusive material’ is sufficiently culpable to fall within the scope of MCL 750.145c(4).” The majority states that this statement is a “preliminary review” of the meaning of “possess” and is not intended to be the final standard. This statement could be read, however, to mean that the power to exercise a degree of dominion and control, without the intent, is sufficient to satisfy the statute because the majority states that the power, itself, is sufficient to “fall within the scope of MCL 750.145c(4).” Despite the unnecessary confusion created by this statement, I will take the majority at its word. I urge the lower courts to do the same and assume that the majority is holding that the power and the intention to exercise dominion and control are required to satisfy the statute.

 Defendant Lazarus admitted intentionally paying to access websites with prohibited images and knowingly viewing prohibited images, but there are no allegations that he intended to save, print, e-mail, enlarge or otherwise exercise dominion and control over the prohibited images. As explained above, the facts with regard to defendant Flick are less clear. While it would be sufficient to establish that he exercised dominion and control if he did save prohibited images to his hard drive, if he did not, then the facts of his case are the equivalent of defendant Lazarus’s.

 For example, a person could want to avoid taking up space on the computer’s hard drive or having other household members see the images. Alternatively, as often happens when a person visits a website, the defendant might be content to view the images as they are presented on the website without any additional action.

 Like Michigan’s statute, the federal statute used to prohibit the knowing possession of child pornography. The statute was amended in 2008, however, and it now prohibits both knowingly possessing prohibited images and knowingly accessing them “with intent to view ....” 18 USC 2252A(a)(5). The federal courts of appeals interpretation of the statute before amendment, however, is still relevant.

 A case cited by the majority opinion, United States v Kain, 589 F3d 945, 950 (CA 8, 2009), did state that “[a] computer user who intentionally accesses child pornography images on a web site gains actual control over the images,” but its analysis has limited utility in this context because the court was interpreting the amended version of 18 USC 2252A(a)(5) discussed in the preceding footnote, and, regardless, the defendant in that case had prohibited images in both TIFs and files that had been manually saved to his computer.

 See, also, United States v Miller, 527 F3d 54, 66-69 (CA 3, 2008) (the defendant saved files to a zip disk); United States v White, 506 F3d 635, 642 (CA 8, 2007) (the defendant saved images to a computer disk, admitted that he had images on his computer, and gave the agent step-by-step instructions on how to access them); United States v Irving, 452 F3d 110, 122 (CA 2, 2006) (images were saved in the “My Documents” folder); United States v Bass, 411 F3d 1198, 1201-1202 (CA 10, 2005) (the defendant purchased special software to attempt to delete TIFs of child pornography from the computer); United States v Tucker, 305 F3d 1193, 1198-1199, 1204 (CA 10, 2002) (the defendant intentionally deleted TIF files).

 In the trial court, defendant Flick argued that his admission was inadmissible because there was no corpus delicti absent the statement. The trial court disagreed because, like the majority of this Court, it determined that paying for and viewing a prohibited image was sufficient to establish possession. Given my differing view of what constitutes “possession,” however, I would remand to the trial court to reconsider this issue.