2022 IL App (2d) 200091-U
No. 2-20-0091
Order filed March 17, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 16-CF-887 |
| ANDREW J. WELLS, | ) ) ) | Honorable Michael E. Coppedge, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE JORGENSEN delivered the judgment of the court.
Justices McLaren and Brennan concurred in the judgment.

**ORDER**

¶ 1   *Held*:  Defendant was properly convicted of child pornography for an image found on a USB drive that a fellow employee took from defendant's desk, where the drive activity and a suspicious file name for an image demonstrated defendant's knowledge of the image in sufficient time for him to terminate his possession of it.

¶ 2   Defendant, Andrew J. Wells, appeals from his conviction, following a bench trial, of a single count of child pornography (720 ILCS 5/11-20.1(a)(6)) (West 2016)).  Defendant argues that the State failed to prove his guilt beyond a reasonable doubt.  We affirm.

¶ 3                                I. BACKGROUND

¶ 4    The three-count indictment charged defendant with possessing three computer files, each of which contained a single image of child pornography.  The files were named "-1j!!! smommysfavdaughta(16).jpg" (count I), "140620102324110375.jpg"    (count II), and "180620100228160546.jpg" (count III).

¶ 5    Michael Donley testified that, in July of 2016, he worked at Wild West Town in McHenry County.  The Donley family operated Wild West Town and other businesses, including a restaurant and an auction house.  Michael helped manage and advertise Wild West Town.  For several years, defendant was a chef with the restaurant.  Later, he provided accounting services for Wild West Town while it was closing down.  Defendant worked in the office at Wild West Town.  The office had three desks and several computers.  One of the desks was "predominantly" used by defendant.  Though that desk was not "a dedicated workspace for anyone else," Michael, his brother Randall, and their parents also had access to the office.  On July 15, 2016, Michael needed a USB drive for a project he was working on, and he discovered a USB drive on defendant's desk.  When he inserted the drive into his computer, a list of files appeared.  Michael opened an image file named "-1j!!!mommysfavdaughta(16).jpg," a file labeled "TaxReturn.pdf," and an accounting software file related to the Donleys' restaurant.  Michael then ejected the drive from the computer and went to talk to Randall.

¶ 6    Randall testified that Michael asked him to contact an attorney about the USB drive.  The attorney advised Randall to contact the police, which he did.

¶ 7    Michelle Asplund testified that she was currently a sergeant with the McHenry County Sheriff's Department.  She had previously been a detective with the department, and she had specialized training in digital forensics.  On or about August 17, 2016, she became involved in a child pornography investigation, which entailed examining the USB drive found on the desk that

defendant used at Wild West Town. Asplund previewed the USB drive with a device that opened the drive in a read-only mode without making modifications to the drive. Asplund looked through the contents of the drive and then made a working copy for her forensic examination. The State's exhibits included screenshots of the USB's file directory. The directory listed individual files and file folders. The directory indicated a "date modified" for each file and folder. Asplund explained that the "date modified" was when the file or folder was saved, copied, or transferred to the drive.

¶ 8    The State introduced several photographs of children that Asplund found on the drive. State's exhibit No. 4 was an image from a file named "-1j!!!mommysfavdaughta(16).jpg." The file appeared as an individual file in the USB directory; it was not in a folder. The image showed a female child in fishnet stockings with her genitals exposed. Asplund testified that, based on her training and experience, the girl in the image appeared to be under 18. The file had a "date modified" of March 14, 2011. The image was the basis of count I of the indictment.

¶ 9    Asplund identified State's exhibit No. 6 as a series of images found in a folder named "attachments2_2010_06_17," in the file directory. Asplund identified State's exhibit No. 7 as an image from a file named "140620102324110375.jpg," from the "attachments2_2010_06_17" folder. The file had a "date modified" of June 17, 2010, and was the basis of count II. The image was of a female child with her legs spread, exposing her genitals. Asplund testified that the girl appeared to be under 18.

¶ 10    Asplund identified State's exhibit No. 9 as a series of images found in a folder named "attachments_2010_06_17," in the directory. She identified State's exhibit 10 as an image from a file named "180620100228160546.jpg," from the "attachments_2010_06_17" folder. The file had a "date modified" of June 17, 2010. The image is of a female child in a plaid skirt and black

stockings with her chest and genitals exposed. Asplund testified that the girl in the image appeared to be under 18. The image was the basis of count III.

¶ 11     Asplund also located files on the USB drive that did not contain images of children. A file named "cam4logininfro.txt" contained account information (a username and password) for a live webcam site. The e-mail address associated with the account was Drew****@yahoo.com. The "cam4logininfro.txt" file had a "date modified" of October 3, 2011.

¶ 12     A file named "charterorderforservice.txt" also appeared on the drive. That file was a confirmation for television and Internet service ordered in defendant's name with the e-mail address Drew****@yahoo.com.

¶ 13     The USB drive also contained (1) QuickBooks accounting software files with "dates modified" in March 2016; (2) a file named "experioncreditreport.txt," containing a credit report with a "date modified" of February 28, 2011; (3) Excel spreadsheet documents named "Joel.xlsx" and "Joel2.xls," authored by defendant; (4) a file named "passwordformoneygramandsuch.txt," which had a "date modified" of December 7, 2011, and contained an e-mail address that incorporated defendant's initials; (5) a file named "paymentconfirmamericangeneral.txt," which had a "date modified" of April 7, 2011, and contained defendant's name, the e-mail address Drew****@yahoo.com, and bank account information; (6) a file named "pushplaymembershipinfo.txt," which had a "date modified" of December 5, 2010, and contained defendant's name, the e-mail address Drew****@yahoo.com, and credit card information; and (7) a file containing one of defendant's tax returns, with a "date modified" of January 26, 2011. Another individual file (not in a folder) named "Kitty_-_More_Dirty_Debutantes_290_-_first_anal_scene.zip.001," had the same "date modified" as the file containing the tax return. (No charges were brought in connection with the "Kitty" file.)

¶ 14    Asplund testified that she spoke with defendant on September 8, 2016. Defendant admitted that the nonpornographic files on the USB drive belonged to him. He denied, however, that any of the pornographic files were his. Defendant told Asplund that he had forgotten that he had brought the USB drive to the Donleys' property. Asplund acknowledged that software was available that could change a file's "date modified." However, Asplund could not tell if such software had been used on the files.

¶ 15    McHenry County Deputy Sheriff Derick Waters testified that he spoke with defendant by telephone on August 2, 2016. Waters informed defendant that the Donleys had discovered child pornography on a USB drive on defendant's desk. Defendant denied that the USB drive was his.

¶ 16    Defendant presented no evidence.

¶ 17    The trial court found defendant guilty on count I (regarding the file "-1j!!! mommysfavdaughta(16).jpg") and not guilty on counts II and III. This appeal followed.

¶ 18                                    II. ANALYSIS

¶ 19    Defendant argues that the evidence of his guilt is insufficient to sustain his conviction. A reviewing court will not set aside a criminal conviction unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). On a challenge to the sufficiency of the evidence, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The trier of fact is responsible for resolving conflicts in the testimony, weighing the evidence, and determining inferences. A reviewing court ordinarily will not substitute its judgment on these matters for the trier of fact. *People v. Cooper*, 194 Ill. 2d 419, 431 (2000).

¶ 20    Child pornography, as defined in section 11-20.1(a)(1)(vii) of the Criminal Code of 2012 (720 ILCS 5/11-20.1(a)(1)(vii) (West 2016)), includes a depiction by computer of a child under 18 "depicted or portrayed in any pose, posture or setting involving a lewd exhibition of the unclothed or transparently clothed genitals, pubic area, buttocks, or, if such person is female, a fully or partially developed breast of the child or other person." As pertinent here, a person commits child pornography if he or she "with knowledge of the nature or content thereof" (*id.* § 11-20.1(a)(6)) possesses child pornography and knows or reasonably should know the person depicted to be under the age of 18. *Id.* Section 11-20.1(b)(5) (*id.* § 11-20.1(b)(5)) provides, in pertinent part:

> "The charge of child pornography does not apply to a person who does not voluntarily possess a *** depiction by computer in which child pornography is depicted. Possession is voluntary if the defendant knowingly procures or receives a *** depiction for a sufficient time to be able to terminate his or her possession."

¶ 21    Defendant does not deny that the image in the file named "-1j!!!mommysfavdaughta (16).jpg" was child pornography. However, he contends that the State failed to prove beyond a reasonable doubt that he knowingly possessed the image. Defendant argues that his possession of the USB drive was not exclusive, because his workspace was shared by others. However, as the prosecutor noted during closing argument:

> "[Defendant] can't distance himself completely from the flash drive because of the incredible amount of his personal information that is on the flash drive. His name and personal information is flashed across every non-pornography file on that flash drive. His tax returns with his Social Security number are there. His bank account number is there. The financial information for his brother-in-law is there. His address is there. Not one but

two of his email addresses are there. His phone numbers are there. A flash drive with this amount of personal information on it, basically every piece of personal information a person could have is on that flash drive."

¶ 22     Defendant maintains that the State did not prove that he was the source of the file. Defendant further argues that "[t]he State presented no evidence that [defendant] viewed, copied, moved or shared the image because there is no such proof." Defendant contends that the trial court improperly relied on *People v. Scolaro*, 391 Ill. App. 3d 671 (2009), and *People v. Gumila*, 2012 IL App (2d) 110761, to find that he possessed child pornography. Those cases held that the defendants knowingly possessed images, stored automatically in temporary Internet files, because the evidence showed that the defendants actively sought out the images rather than happening upon them by accident. See *Scolaro*, 391 Ill. App. 3d at 680; *Gumila*, 2012 IL App (2d) 110761, ¶¶ 68-73. Contrary to defendant's argument, the trial court did not rely on these cases. The trial court noted that if defendant's possession of the USB drive were *exclusive*, that circumstance would support a finding that defendant sought out the image (like the defendants in *Scolaro* and *Gumila* did). However, the trial court found that defendant's possession of the USB drive was *not* exclusive. The trial court also expressly found no evidence that defendant downloaded any pornographic images or searched for them on the Internet.

¶ 23     Nonetheless, the trial court concluded that there was sufficient evidence that defendant knowingly and voluntarily possessed the image. The trial court noted that the file named "-1j!!! mommysfavdaughta(16).jpg" had a "date modified" of March 14, 2011. That date fell between the modification dates for two files that defendant admitted belonged to him. The file named "experioncreditreport.txt," containing a credit report, had a "date modified" of February 28, 2011. The file named "paymentconfirmamericangeneral.txt" had a "date modified" of April 7, 2011. The

trial court concluded that, if defendant had not placed the file named "-1j!!! mommysfavdaughta(16).jpg" on the USB drive, he would have noticed the peculiar title. The trial court applied the same reasoning to the file named "Kitty_-_More_Dirty_Debutantes_290_-_first_anal_scene.zip.001," which had an even more suggestive name. Both files appeared individually in the USB's directory and were not in folders. Further, as the trial court noted, the "Kitty" file had the same "date modified" (January 26, 2011) as a tax return on the USB drive; thus, there was activity on both files on the same day. The trial court, in essence, concluded that, under the circumstances, it was unreasonable to believe that defendant would not have noticed suspiciously sounding files in the USB drive directory and discovered the image "-1j!!! mommysfavdaughta(16).jpg."[1] The trial court further concluded that defendant's possession was voluntary because he knew the image's content but took no steps to erase or report it. We add that defendant had ample time to do so before Michael discovered the image.

¶ 24    The trial court made reasonable inferences in finding defendant guilty on count I. Defendant contends that there was no evidence that the computer he used at Wild West Town ever displayed a list of the files on the USB drive. However, given the amount of work stored on the USB drive, it is a reasonable inference that, at some point, defendant would have pulled up a file directory alerting him to the presence of suspicious files on the USB drive. The trial court reasonably inferred that defendant would have investigated those files. As noted, it was the trial court's function to draw inferences from the evidence. We cannot stress enough that, as a

---

[1] The trial court distinguished the other two images defendant was charged with possessing. The court reasoned that these images were found in innocuously named files within innocuously named folders.

reviewing court, it is not our role to retry defendant. *People v. Rojas*, 359 Ill. App. 3d 392, 397 (2005).

¶ 25    Finally, it is significant that defendant falsely told Waters that the USB drive containing the child pornography images was not his.  It is well established that a false exculpatory statement is probative of consciousness of guilt.  *People v. Beaman*, 229 Ill. 2d 56, 80-81 (2008).  In sum, we cannot say the evidence of defendant's guilt "is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *Collins*, 106 Ill. 2d at 261.

¶ 26                                     III. CONCLUSION

¶ 27    For the these reasons, we affirm the judgment of the circuit court of McHenry County.

¶ 28    Affirmed.