

# In the Missouri Court of Appeals
# Eastern District

## DIVISION ONE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED110207 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Warren County |
| vs. | ) | 18BB-CR00096-01 |
| | ) | |
| STEPHEN CRAIG INGRAM, | ) | Honorable Linda R. Hamlett |
| | ) | |
| Appellant. | ) | Filed: March 14, 2023 |

Stephen Craig Ingram ("Defendant") appeals the judgment, following a bench trial, finding him guilty of one count of the class B felony of possession of more than twenty still images of child pornography, and sentencing Defendant to nine years of imprisonment. Defendant presents three points on appeal. In Defendant's first and second points, he argues there was insufficient evidence to support his conviction. In Defendant's third point, he asserts the trial court erred in denying his motions to suppress evidence of child pornography images found on Defendant's Yahoo Flickr account[1] and found on Defendant's computer because evidence of the images was allegedly obtained unlawfully in violation of the Fourth Amendment to the U.S. Constitution.

---

[1] At the time of the underlying events in this case, (1) Yahoo, an electronic service provider, owned Flickr; and (2) a person who had a Yahoo email account could opt to have a Yahoo Flickr account where he could upload photos, store photos, and share photos with other people.

Defendant's arguments on appeal present three matters of first impression for Missouri Courts: (1) the consideration of evidence of child pornography images found in "cache" files[2] on a defendant's computer for purposes of a sufficiency-of-the-evidence analysis; and (2)-(3) whether an electronic service provider such as Yahoo and whether the National Center for Missing and Exploited Children ("the National Center for Missing and Exploited Children" or "the NCMEC") subject a defendant to an unlawful search and seizure in violation of the Fourth Amendment to the U.S. Constitution under circumstances like the ones in this case.[3]

As discussed in detail below, we hold there was sufficient evidence to support Defendant's conviction for possession of more than twenty still images of child pornography under the circumstances of this case where there was evidence of ten such images found on Defendant's Yahoo Flickr account; there was evidence of thirty-nine additional child pornography images found in cache files on Defendant's computer; and there was other, significant corroborating evidence to support a finding beyond a reasonable doubt that Defendant knowingly possessed more than twenty still images of child pornography.

We also hold the trial court did not err in denying Defendant's motions to suppress evidence of child pornography found on Defendant's Yahoo Flickr account and found on

---

[2] Detective Kevin Mountain testified at Defendant's bench trial that a "cache" or "thumb cache" file is, (1) generated by a computer when a user obtains, saves, moves, or views images; and (2) "is used by the operating system [which] works in a way . . . to be user friendly [and] helps speed up the recovery or the opening . . . of th[e] image itself." As discussed in detail below, the evidence presented at Defendant's bench trial pertaining to cache files showed, *inter alia*, that: Defendant downloaded child pornography images to his computer; Defendant deleted those images prior to a forensic examination of his computer; the forensic examination of Defendant's computer revealed thirty-nine cache files, which officers determined were evidence of original child pornography images previously located on the computer; and the State provided specific descriptions of child pornography images with respect to the thirty-nine cache files.

[3] As explained below, the circumstances of this case are as follows: Yahoo detected that multiple suspected child pornography images were uploaded to a Yahoo Flickr account from an internet protocol ("IP") address, which were both later determined to be Defendant's; Yahoo viewed the entire contents of all suspected images and determined they were all tied to one specific IP address; Yahoo made a "CyberTip" and reported the information to the National Center for Missing and Exploited Children; the NCMEC viewed the entire contents of the suspected images and "geolocated" the IP address to Missouri in general; and the NCMEC reported the CyberTip information to State of Missouri law enforcement, including the St. Charles County Cybercrimes Unit.

Defendant's computer because there was no Fourth Amendment violation under the circumstances of this case. Specifically, Defendant did not meet his burden of proving by a preponderance of evidence that Yahoo, a private party, was acting as a government agent or instrument when it searched his Yahoo Flickr account and seized information concerning child pornography images. Additionally, assuming *arguendo* that the National Center for Missing and Exploited Children was acting as a government agent or instrument in this case, the NCMEC did not exceed the scope of Yahoo's search by merely reviewing the identical evidence that Yahoo also reviewed and placed in a "CyberTip." Finally, to the extent the NCMEC took the additional action of geolocating Defendant's internet protocol ("IP") address[4] to Missouri in general, this did not constitute a search to which the Fourth Amendment applied because a defendant does not have a reasonable expectation of privacy in an IP address.

Accordingly, we affirm the trial court's judgment finding Defendant guilty of possession of more than twenty still images of child pornography, and sentencing Defendant to nine years of imprisonment.

## I.    BACKGROUND

Defendant was charged by amended information with committing the class B felony of possession of more than twenty still images of child pornography, occurring "on or about January 24, 2017." Prior to trial, Defendant filed a motion to suppress evidence of child pornography images. Defendant's motion argued Yahoo and the National Center for Missing and Exploited Children subjected Defendant to an unlawful search and seizure in violation of the Fourth Amendment to the U.S. Constitution; and, as a result, any evidence obtained from Yahoo, the NCMEC, or the subsequent investigation by Missouri law enforcement should be suppressed. After holding a suppression hearing, the trial court denied Defendant's motion to suppress.

---

[4] A computer's IP address can determine the physical location of the computer.

3

Thereafter, Defendant waived his right to a jury trial on the record, and defense counsel filed a written waiver of a jury trial. At Defendant's bench trial, Defendant filed a renewed motion to suppress evidence of child pornography images,[5] which was heard alongside the evidence at trial. Defendant also made a continuing objection to the evidence of child pornography images based on his motions to suppress. The trial court denied Defendant's renewed motion to suppress.

## A.    Relevant Portions of Defendant's Suppression Hearing and Trial

Viewed in the light most favorable to Defendant's motions to suppress and to the trial court's verdict,[6] the following relevant evidence was adduced at Defendant's suppression hearing and trial.

The parties "agreed to submit th[e] case on the [ ] reports." The evidence consisted of State's Exhibits 1 through 9 and included police reports; a CyberTip report; the deposition of the State's forensic examiner Detective Kevin Mountain; a stipulation of facts; and printed photographs of child pornography.

On January 24, 2017, Yahoo, an electronic service provider, detected multiple suspected child pornography images being uploaded to a Yahoo Flickr account named "newdfun@yahoo.com." *See* footnote 1 of this opinion. Yahoo viewed the entire contents of all suspected images and determined they were all tied to one specific IP address. Yahoo then made

---

[5] For purposes of this opinion, we will collectively refer to Defendant's initial motion to suppress and renewed motion to suppress as "motions to suppress."

[6] *See State v. Davis*, 522 S.W.3d 360, 364 (Mo. App. E.D. 2017) (where, as in this case, a defendant challenges the denial of a motion to suppress, we consider the evidence presented at both the suppression hearing and at trial, and we view the facts and reasonable inferences therefrom in the light most favorable to the trial court's ruling); *see also State v. Peeler*, 603 S.W.3d 917, 920 (Mo. App. E.D. 2020) (where, as in this case, a defendant claims there was insufficient evidence to support his criminal conviction in a court-tried case, an appellate court views all evidence and reasonable inferences therefrom in the light most favorable to the court's verdict, and we disregard all evidence and inferences contrary to the verdict).

a CyberTip and reported the information to the National Center for Missing and Exploited Children.

Subsequently, the NCMEC viewed the entire contents of all the suspected images, and "geolocated" the IP address to Missouri in general. The NCMEC then reported the CyberTip information to State of Missouri law enforcement, including the St. Charles County Cybercrimes Unit.

Based on the information in the CyberTip, (1) Detective Daniel Asher with the St. Charles County Cybercrimes Unit determined ten photographs of naked "prepubescent" children exposing their vaginas or penises were uploaded to the Yahoo Flickr account named "newdfun@yahoo.com" on January 24, 2017; and (2) Detective Asher traced the IP address to Defendant's Charter Communications internet account and traced the Charter account's address to Defendant's home address.

Detective Asher then obtained a search warrant to search Defendant's home. Police executed the search warrant on June 8, 2017 and found Defendant's computer in the basement. While officers were searching Defendant's home, Detective Asher visited Defendant, who was located elsewhere,[7] to speak with him. During Detective Asher's conversation with Defendant, Defendant acknowledged he had an email address of "newdfun@yahoo.com" and a Flickr account associated with that email address.

Defendant also made other admissions and statements to Detective Asher including that: Defendant believed he had approximately twenty child pornography images on his Flickr account; child pornography images would typically upload automatically to Defendant's Flickr

---

[7] Detectives conducted "pre-surveillance" on Defendant prior to executing the search warrant, which Detective Asher stated is a "routine" practice. The pre-surveillance of Defendant revealed there was a residence other than Defendant's home address that Defendant often went to when he was not working, and Detective Asher found and visited Defendant at this other residence when Defendant was not located at his home during the execution of the search warrant.

5

account; Defendant downloaded pornographic photographs of children from a website called "ChatStep" to his computer; his computer "probably" had child pornography on it; and Defendant was not excited by child pornography and only possessed it because "it was just different."

Detective Kevin Mountain connected Defendant's computer hard drive to a forensic computer and conducted a forensic examination. Detective Mountain found two computer programs on Defendant's computer considered to be "computer cleaning tools," which were designed to delete directories, temporary files, internet history, download history, the recycle bin, recent documents, and other items.

During the forensic examination, Detective Mountain used a program called a "thumb cache viewer" and found thirty-nine cache files on Defendant's laptop hard drive that contained evidence of thirty-nine images of "prepubescent" or "minor" children exposing their vaginas, breasts, and penises, sometimes engaging in explicit sexual acts. The evidence was found under the user name "Craig," Defendant's middle name. Detective Mountain testified that in order for each of the thirty-nine cache files to exist, Defendant had corresponding original files on his computer at some point and had deleted them. Detective Mountain's testimony indicated Defendant could not have accessed the thirty-nine cache files on the day the search warrant was executed (June 8, 2017) because Defendant's computer did not have the "thumb cache viewer" program used by the detective during his forensic examination.

State's Exhibit 8 was a stipulation of facts between the parties. Defendant stipulated Detective Mountain completed a forensic examination of Defendant's computer. The stipulation provided Defendant's computer contained "[at least thirty-nine] files of what [Detective Mountain] believe[d] from his training and experience to be child pornography" and an

6

additional twenty-four images of potential child pornography.[8]  The stipulation also contained a description of thirty-nine photographs, generally involving "prepubescent" or "minor" children exposing their vaginas, breasts, and penises, sometimes engaging in explicit sexual acts.  Finally, the thirty-nine photographs described in State's Exhibit 8 were different from the ten photographs of child pornography that Defendant had uploaded to his Flickr account.

## B.    Relevant Procedural Posture

After Defendant's bench trial, the trial court found Defendant guilty of one count of the class B felony of possession of more than twenty still images of child pornography.  Defendant then filed a motion for judgment of acquittal notwithstanding the verdict and a motion for new trial.  The trial court denied both motions, and the court entered a judgment in accordance with its guilty verdict and sentenced Defendant to nine years of imprisonment.  Defendant appeals.

## II.    DISCUSSION

Defendant raises three points on appeal.  In Defendant's first and second points, he argues there was insufficient evidence to support his conviction.  In Defendant's third point, he asserts the trial court erred in denying his motions to suppress evidence of child pornography images found on Defendant's Yahoo Flickr account and found on Defendant's computer because evidence of the images was allegedly obtained unlawfully in violation of the Fourth Amendment to the U.S. Constitution.  For the reasons discussed below, we find none of Defendant's points on appeal have merit.

## A.    Defendant's Sufficiency-of-the Evidence Claims

Defendant's first point on appeal argues the date on which Defendant is alleged to have possessed child pornography is an element of the offense that the State failed to prove beyond a

---

[8] Detective Mountain testified the additional twenty-four images were only "potential" child pornography because, *inter alia*, it was difficult to determine if the subjects were under the age of eighteen based on their level of development.

reasonable doubt. Defendant's second point on appeal asserts the State failed to prove beyond a reasonable doubt that Defendant committed all of the elements of the class B felony of possession of more than twenty still images of child pornography.

### 1. Standard of Review

Appellate review of a claim there was insufficient evidence to support a criminal conviction in a court-tried case "is limited to whether the State has introduced adequate evidence from which a reasonable finder of fact could have found each element of the crime beyond a reasonable doubt." *State v. Peeler*, 603 S.W.3d 917, 920 (Mo. App. E.D. 2020) (quoting *State v. Lammers*, 479 S.W.3d 624, 632 (Mo. banc 2016)). In making that determination, we view all evidence and reasonable inferences therefrom in the light most favorable to the court's verdict, and we disregard all evidence and inferences contrary to the verdict. *Peeler*, 603 S.W.3d at 920. "Reasonable inferences can be drawn from both direct and circumstantial evidence, and circumstantial evidence alone can be sufficient to support a conviction." *Id*. (citation omitted). However, our Court "will not supply missing evidence or grant the State unreasonable, speculative, or forced inferences." *Peeler*, 603 S.W.3d at 920-21 (quoting *Lammers*, 479 S.W.3d at 632).

### 2. The Date on Which a Defendant is Alleged to Have Possessed Child Pornography is Not an Element of the Offense of Possession of Child Pornography

As previously stated, the amended information alleged Defendant possessed more than twenty still images of child pornography on or about January 24, 2017. In his first point on appeal, Defendant claims the date on which Defendant is alleged to have possessed more than twenty still images of child pornography is an element of the offense that the State failed to

prove beyond reasonable doubt. [9],[10] However, this argument fails because, under the portion of section 573.037 RSMo 2016[11] relevant to the circumstances of this case, the elements of the class B felony of possession of child pornography are only that a defendant, (1) "knowingly or recklessly"; (2) "possesses"; (3) "[m]ore than twenty still images of child pornography" "of a minor less than eighteen years of age."[12] Section 573.037.1 and .2(1)(a); *see also State v. Foster*, 591 S.W.3d 518, 522, 522 n.4 (Mo. App. W.D. 2019).

The date on which a defendant is alleged to have possessed child pornography is not an element of the offense. *Id*.; *State v. Roggenbuck*, 387 S.W.3d 376, 378, 380 n.1, 382 (Mo. banc 2012) (citing to a prior version of section 573.037 and holding "[t]he dates on which [a defendant] obtained possession of the images are not an element of the offense [of possession of

---

[9] In the argument section of his initial brief, Defendant argues this is a "multiple acts case" and his finding of guilt violates principles of *State v. Celia-Garcia*, 344 S.W.3d 150 (Mo. banc 2011) because Defendant allegedly "is not aware of what acts resulted in his guilty verdict." *See id*. at 155-58 (holding, (1) a criminal defendant has a right to a unanimous jury verdict in the context of a multiple acts case; and that (2) a "multiple acts case" is one in which there is evidence of multiple, distinct criminal acts, each of which could serve as the basis for a criminal charge, but the defendant is charged with the acts within a single count). We reject Defendant's *Celis-Garcia* argument for multiple reasons. First, because this argument was not set out in Defendant's point relied on, the argument is deemed abandoned. *Brizendine v. Conrad*, 71 S.W.3d 587, 593, 593 n.5 (Mo. banc 2002). Second, even if we were to review Defendant's *Celis-Garcia* argument, it has no merit. As Defendant concedes, *Celis-Garcia* involves "jury unanimity issues" and there are no such issues here "due to [the fact there was a] bench trial"; accordingly, *Celis-Garcia* is distinguishable. Third, Defendant's argument that he allegedly "is not aware of what acts resulted in his guilty verdict" has no merit because the parties "agreed to submit th[e] case on the [ ] reports" and the parties filed a stipulation of facts at trial. Further, the reports and stipulation of facts demonstrate Defendant's guilty verdict was based on: the evidence of ten child pornography images found on Defendant's Yahoo Flickr account; the evidence of thirty-nine additional child pornography images found in cache files on Defendant's computer; and other, significant corroborating evidence to support a finding beyond a reasonable doubt that Defendant knowingly possessed more than twenty still images of child pornography.

[10] In Defendant's reply brief, he argues for the first time on appeal that there is "an issue with respect to the statute of limitations [for the offense of possession of child pornography]" in this case. We reject this argument for two reasons. "First, a reply brief is to be used only to reply to arguments raised by respondents, not to raise new arguments on appeal, and an appellate court will not review an allegation of error made for the first time in the reply brief." *State v. Smith*, 491 S.W.3d 286, 304 n.9 (Mo. App. E.D. 2016) (citation and internal quotations omitted). Second, even if we were to review Defendant's statute of limitations claim, it has no merit because it is an affirmative defense and "[Defendant] has failed to meet his burden of proof to show the statute [of limitations] has expired[.]" *State v. Anderson*, 294 S.W.3d 96, 101 (Mo. App. E.D. 2009).

[11] Unless otherwise indicated, all statutory references to section 573.037 in this opinion are to RSMo 2016 (effective from January 1, 2017 to the present).

[12] There are alternative ways a person commits the class B felony of possession of child pornography that are not relevant to this case. *See* section 573.037.2(1)(b)-(d) and .2(2). Additionally, "[t]he offense of possession of child pornography is a class D felony if the person possesses one still image of child pornography or one obscene still image." Section 573.037.2.

child pornography]"). Accordingly, the State did not have to prove the date alleged in the information in this case beyond a reasonable doubt. *Id*.; *see also Peeler*, 603 S.W.3d at 920 (appellate review of a claim there was insufficient evidence to support a criminal conviction in a court-tried case "is limited to whether the State has introduced adequate evidence from which a reasonable finder of fact could have found each *element* of the crime beyond a reasonable doubt") (quoting *Lammers*, 479 S.W.3d at 632) (emphasis added). Point one is denied.

3.      **The State Proved Beyond a Reasonable Doubt that Defendant Committed All of the Elements of the Class B Felony of Possession of More Than Twenty Still Images of Child Pornography**

In Defendant's second point on appeal, he asserts there was insufficient evidence to show beyond a reasonable doubt that Defendant committed all of the elements of the class B felony of possession of more than twenty still images of child pornography. For the reasons discussed below, we disagree.

a.      **The Elements of the Offense of the Class B Felony of Possession of Child Pornography Applicable to this Case, Relevant Statutory Definitions, and Relevant Case Law**

As previously stated, the elements of the class B felony of possession of child pornography applicable to this case are that the defendant, (1) "knowingly or recklessly"; (2) "possesses"; (3) "[m]ore than twenty still images of child pornography" "of a minor less than eighteen years of age." Section 573.037.1 and .2(1)(a); *see also Foster*, 591 S.W.3d at 522, 522 n.4. A person acts "[k]nowingly" with respect to his conduct or to a result thereof when he "is aware of the nature of his . . . conduct" or "is aware that his . . . conduct is practically certain to cause that result[.]" Section 556.061(31)(a) and (b) RSMo 2016[13] (emphasis omitted);[14] *see also*

---

[13] All statutory references to section 556.061 in this opinion are to RSMo 2016 (effective from January 1, 2017 to August 27, 2020).
[14] To avoid unnecessary repetition, emphasis has been omitted by this Court in all further references to statutory definitions in section 556.061 and section 573.010 RSMo 2016.

*Foster*, 591 S.W.3d at 522-23, 523 n.7 (similarly applying a term's definition in the general definition section of the criminal code to the offense of child pornography).

Additionally, a person acts "[r]ecklessly" when he "consciously disregard[s] a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation[.]" Section 556.061(42); *see also Foster*, 591 S.W.3d at 522-23, 523 n.7. Because a person's mental state is rarely capable of being proven with direct evidence, "[p]roof of a requisite mental state is usually established by circumstantial evidence and permissible inferences." *State v. Kinsella*, 578 S.W.3d 802, 814-15 (Mo. App. E.D. 2019) (citation omitted).

Furthermore, "[p]ossess" or "possessed" is defined as:

[H]aving actual or constructive possession of an object with knowledge of its presence. A person has actual possession if such person has the object on his or her person or within easy reach and convenient control. A person has constructive possession if such person has the power and the intention at a given time to exercise dominion or control over the object either directly or through another person or persons. Possession may also be sole or joint. If one person alone has possession of an object, possession is sole. If two or more persons share possession of an object, possession is joint[.]

Section 556.061(38); *see also Foster*, 591 S.W.3d at 522-23, 523 n.7.

Section 573.010(4)(b)b. RSMo 2016[15] defines "[c]hild pornography" in relevant part as:

[ ] Any visual depiction, including any . . . computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct where:

[ ] Such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct, in that the depiction is such that an ordinary person viewing the depiction would conclude that the depiction is of an actual minor engaged in sexually explicit conduct[.]

---

[15] All statutory references to section 573.010 in this opinion are to RSMo 2016 (effective from January 1, 2017 to August 27, 2022).

### b. Analysis of Defendant's Argument Pertaining to the Consideration of Evidence of Child Pornography Images Found in Cache Files on a Defendant's Computer

In this case, Defendant argues he should have been convicted of the class D felony of possession of child pornography under section 573.037.2 instead of the class B felony of possession of more than twenty still images of child pornography under section 573.037.2(1)(a). Defendant maintains there were only ten child pornography images found on his Yahoo Flickr account, and the evidence of the thirty-nine, additional child pornography images found in the cache files on Defendant's computer should not be considered under a sufficiency-of-the evidence analysis under the circumstances of this case.

Again, the evidence in this case regarding cache files showed the following. A cache file is generated by a computer when a user obtains, saves, moves, or views images. A cache file "is [also] used by the operating system [which] works in a way . . . to be user friendly [and] helps speed up the recovery or the opening . . . of th[e] image itself." During the forensic examination, Detective Mountain used a program called a "thumb cache viewer" and found thirty-nine cache files on Defendant's laptop hard drive containing evidence of thirty-nine images of "prepubescent" or "minor" children exposing their vaginas, breasts, and penises, sometimes engaging in explicit sexual acts. The evidence was found under the user name "Craig," Defendant's middle name.

Detective Mountain testified that in order for each of the thirty-nine cache files to exist, Defendant had corresponding original files on his computer at some point and had deleted them. Detective Mountain's testimony indicated Defendant could not have accessed the thirty-nine cache files on the day the search warrant was executed (June 8, 2017) because Defendant's computer did not have the "thumb cache viewer" program used by the detective during his forensic examination.

### i. Relevant Law Pertaining to Cache Files

The consideration of evidence of child pornography images found in cache files on a defendant's computer for purposes of a sufficiency-of-the-evidence analysis is an issue of first impression for Missouri Courts. Accordingly, we look to relevant case law from other jurisdictions which we find instructive on this issue.

We hold there is sufficient evidence to support a conviction for knowing possession of child pornography when there is evidence of child pornography images found in cache files on a defendant's computer and there is other corroborating evidence to support a finding beyond a reasonable doubt that the defendant knowingly possessed child pornography.[16] *See Marsh v. People*, 389 P.3d 100, 107-09 (Colo. 2017) (similarly holding). This is true even if there is no evidence the defendant knew of the cache files, even if there was not special software on the defendant's computer allowing him to view the cache files, and even if the defendant deleted the original pornography images which corresponded to the cache files. *See State v. Beck*, 828 S.E.2d 821, 825-27 (W. Va. 2019) (holding there can be sufficient evidence to support a conviction for knowing or willful possession of child pornography even where the state cannot prove beyond a reasonable doubt that the defendant knew the cached files existed); *United States v. Bass*, 411 F.3d 1198, 1200-02 (10th Cir. 2005) (similarly finding with respect to the federal government's burden of proof); *State v. Sowin*, No. 2019AP647-CR, 2020 WL 5650891, at *1-5

---

[16] We need not determine whether the mere presence of child pornography in a computer's cache files is sufficient to establish that a defendant knowingly or recklessly possessed child pornography under section 573.037, because in this case there was other, significant corroborating evidence to support a finding beyond a reasonable doubt that Defendant knowingly possessed more than twenty still images of child pornography. Nevertheless, we note that there was considerable discussion during oral argument of this case about how, as a result of modern technology, a person could involuntarily or inadvertently receive or download digital files, including cache files, which constitute evidence of child pornography. Importantly, in order for there to be sufficient evidence to support a defendant's conviction for possession of child pornography, the State must prove beyond a reasonable doubt that a defendant *knowingly or recklessly* possessed child pornography. *See* section 573.037; *Peeler*, 603 S.W.3d at 920 (citing *Lammers*, 479 S.W.3d at 632); section 556.061(31)(a) and (b); section 556.061(42); *see also State v. Marquis*, 446 S.W.3d 311, 318 (Mo. App. W.D. 2014) (indicating a person's accidental download of child pornography images may not constitute knowing or reckless possession of the images).

(Wis. Ct. App. Sept. 23, 2020) (finding there was sufficient evidence to support a conviction for knowing possession of child pornography even though there was not special software on the defendant's computer allowing him to view particular files where there was other evidence supporting a finding that defendant knowingly possessed child pornography); *cf. Marsh*, 389 P.3d at 108-09 (holding deletion of child pornography images after knowingly downloading them to a computer can constitute sufficient evidence of knowing possession of child pornography).

When there is evidence a defendant had cache files on his computer, additional corroborating evidence which is sufficient to support the defendant's conviction for knowing possession of child pornography includes evidence showing that, *inter alia*, (1) the defendant intentionally searched for child pornography images, found them, and knowingly accepted them onto his computer by downloading them, even if that acceptance is temporary; (2) the defendant knowingly downloaded child pornography images from child pornography websites and subsequently deleted them; (3) the defendant had resources or special software to help him "clean" or delete files from his computer; and (4) the defendant had a history of accessing and viewing child pornography images. *United States v. Croghan*, 973 F.3d 809, 825 (8th Cir. 2020) (intentionally searching for images, finding images, and knowingly accepting images); *State v. Linson*, 896 N.W.2d 656, 662-63 (S.D. 2017) (similarly finding); *Marsh*, 389 P.3d at 108-09 (knowingly downloading images, deleting them, and having a history of accessing and viewing child pornography images); *Wilson v. State*, 419 S.W.3d 582, 587-92 (Tex. App. 2013) and *People v. Scolaro*, 910 N.E.2d 126, 130-33 (Ill. App. Ct. 2009) and *Bass*, 411 F.3d at 1201-02 (having resources or special software to help "clean" or delete files from the computer and having a history of accessing and viewing child pornography images).

14

### ii. Application of the Relevant Law Pertaining to Cache Files to the Circumstances of this Case

In this case, Defendant asserts the evidence of child pornography images found in cache files on his computer are insufficient to support his conviction because, (1) there was no evidence adduced at trial showing Defendant knew of the existence of the thirty-nine cache files; (2) the evidence presented at trial indicated Defendant could not have accessed the thirty-nine cache files on the day the search warrant was executed (June 8, 2017) because Defendant's computer did not have the "thumb cache viewer" program used by Detective Mountain during his forensic examination; and (3) the evidence at trial showed Defendant had deleted the corresponding original files of child pornography images that were on his computer. As indicated in the preceding subsection, each of Defendant's arguments have been rejected by other courts. *See Beck*, 828 S.E.2d at 825-27; *Bass*, 411 F.3d at 1200-02; *Sowin*, 2020 WL 5650891 at *1-5; *cf. Marsh*, 389 P.3d at 108-09. We similarly reject Defendant's argument here, because in addition to evidence of child pornography images found in the thirty-nine cache files on Defendant's computer, there is other, significant corroborating evidence to support Defendant's conviction for knowing possession of more than twenty still images of child pornography. *See Marsh*, 389 P.3d at 107-09.

First, viewing the evidence and all reasonable inferences in the light most favorable to the verdict, the evidence shows Defendant intentionally searched for child pornography images, found them, and knowingly accepted them onto his computer by downloading them, even if that acceptance was temporary. *See Croghan*, 973 F.3d at 825; *see also Linson*, 896 N.W.2d at 662-63; *Marsh*, 389 P.3d at 108-09. Defendant made admissions and statements to Detective Asher demonstrating Defendant went to a website called "ChatStep"; he searched for child pornography images on that site and found them; and he knowingly accepted them onto his

15

computer by downloading them. Moreover, after downloading the original child pornography images to his computer, Defendant deleted the images, possibly with the two programs on his computer considered to be "computer cleaning tools." *See Marsh*, 389 P.3d at 108-09; *Wilson*, 419 S.W.3d at 587-92; *Scolaro*, 910 N.E.2d at 130-33; *Bass*, 411 F.3d at 1201-02.

Defendant also admitted he had a history of accessing and viewing child pornography and admitted to possessing child pornography images. *See id.* Defendant told Detective Asher he believed he had approximately twenty child pornography images on his Yahoo Flickr account named "newdfun@yahoo.com." Additionally, Defendant stated he "probably" had child pornography on his computer; the cache-file evidence was found under the user name "Craig," Defendant's middle name; and Defendant admitted he possessed child pornography images because "it was just different."

The ten photographs found on Defendant's Yahoo Flickr account were images of naked "prepubescent" children exposing their vaginas or penises, and the thirty-nine cache files on Defendant's computer contained evidence of thirty-nine images of "prepubescent" or "minor" children exposing their vaginas, breasts, and penises, sometimes engaging in explicit sexual acts. We find an ordinary person viewing images with these descriptions would conclude the depictions are of actual minors engaged in sexually explicit contact, and, therefore, the statutory definition of "child pornography" has been met. *See* section 573.010(4)(b)b. (defining "[c]hild pornography" in relevant part as "[a]ny visual depiction, including any . . . computer or computer-generated image or picture . . . of sexually explicit conduct where . . . the depiction is such that an ordinary person viewing the depiction would conclude that the depiction is of an actual minor engaged in sexually explicit conduct").

Based on the above evidence, Defendant took affirmative actions to seek out child pornography images and place a total of forty-nine such images on his Yahoo Flickr account and

16

on his computer at one point in time, and for whatever duration he chose, to bring it under his control. Accordingly, we find the State proved beyond a reasonable doubt that Defendant had constructive possession of a total of forty-nine child pornography images. *See Linson*, 896 N.W.2d at 662-63 (finding a defendant had constructive possession of child pornography images under similar circumstances); *see also Croghan*, 973 F.3d at 825 ("[c]onstructive possession of child pornography is established when[, as in this case,] a person has ownership, dominion or control over the pornographic material itself, or dominion over the premises in which the pornographic material is concealed") (original bracketed alterations omitted); section 556.061(38) (defining "[p]ossess" or "possessed" and stating "[a] person has constructive possession if such person has the power and the intention at a given time to exercise dominion or control over the object either directly or through another person or persons").

Based on the foregoing, there was sufficient evidence to prove beyond a reasonable doubt that Defendant was aware of the nature of his conduct and "knowingly" "possesse[d]" "[m]ore than twenty still images of child pornography" "of a minor less than eighteen years of age." *See id.*; section 573.037.1 and .2(1)(a) (setting forth the elements of the offense of the class B felony of possession of child pornography relevant to this case); section 556.061(31)(a) (defining "[k]nowingly" in relevant part as being "aware of the nature of his . . . conduct"); *see also Kinsella*, 578 S.W.3d at 814-15 ("[p]roof of a requisite mental state is usually established by circumstantial evidence and permissible inferences") (citation omitted); section 573.010(4)(b)b. (defining "[c]hild pornography" in relevant part); *Croghan*, 973 F.3d at 825 (finding a defendant "knowingly" "possess[es]" child pornography when, as in this case, he "intentionally searched for images of child pornography, found them, and knowingly accepted them onto his computer, even if that acceptance was merely temporary") (citation and internal quotations omitted). Point two is denied.

17

**B.    Defendant's Fourth Amendment Claims**

In Defendant's third and final point on appeal, he asserts the trial court erred in denying his motions to suppress evidence of child pornography images found on Defendant's Yahoo Flickr account and found on Defendant's computer because evidence of the images was allegedly obtained unlawfully in violation of the Fourth Amendment to the U.S. Constitution.

The evidence relevant to this point can be summarized as follows. Yahoo, an electronic service provider, detected multiple suspected child pornography images being uploaded to a Yahoo Flickr account named "newdfun@yahoo.com." Yahoo viewed the entire contents of all suspected images and determined they were all tied to one specific IP address. Yahoo Flickr then made a CyberTip and reported the information to the National Center for Missing and Exploited Children.

Subsequently, the NCMEC viewed the entire contents of all the suspected images, and "geolocated" the IP address to Missouri in general. The NCMEC then reported the CyberTip information to State of Missouri law enforcement, including the St. Charles County Cybercrimes Unit.

Based on the information in the CyberTip, (1) Detective Asher with the St. Charles County Cybercrimes Unit determined ten photographs of naked "prepubescent" children exposing their vaginas or penises were uploaded to the Yahoo Flickr account named "newdfun@yahoo.com" on January 24, 2017; and (2) Detective Asher traced the IP address to Defendant's Charter Communications internet account and traced the Charter account's address to Defendant's home address. Detective Asher then obtained a search warrant to search Defendant's home, and police subsequently found evidence of thirty-nine other child pornography images in cache files on Defendant's computer.

### 1. Standard of Review

Our review of a trial court's denial of a motion to suppress is limited to a determination of whether the decision is supported by substantial evidence. *State v. Davis*, 522 S.W.3d 360, 364 (Mo. App. E.D. 2017). In making this determination, we consider the evidence presented at both the suppression hearing and at trial, we view the facts and reasonable inferences therefrom in the light most favorable to the trial court's ruling, and we disregard any contrary evidence and inferences. *Id.* This Court will reverse the trial court's ruling only if it is clearly erroneous, *i.e.*, only if we are left with a definite and firm impression that a mistake has been made. *Id.*; *State v. Loggins*, 445 S.W.3d 105, 109 (Mo. App. E.D. 2014). While we defer to the trial court's determinations of witness credibility and the weight given to the evidence, we review questions of law such as whether a constitutional provision was violated *de novo*. *State v. Snider*, 535 S.W.3d 382, 387 (Mo. App. E.D. 2017); *Davis*, 522 S.W.3d at 364.

### 2. Analysis of Defendant's Arguments on Appeal

In this case, Defendant claims Yahoo and the National Center for Missing and Exploited Children subjected Defendant to an unlawful search and seizure in violation of the Fourth Amendment; and, as a result, any evidence obtained from Yahoo, the NCMEC, or the subsequent investigation by Missouri law enforcement should be suppressed under the circumstances of this case.[17] The claims pertaining to Yahoo and the NCMEC involve issues of first impression for Missouri Courts. Accordingly, we look to relevant case law from other jurisdictions, which we find instructive on these claims.

---

[17] We note Defendant claims evidence obtained from the investigation by Missouri law enforcement was obtained unlawfully under the Fourth Amendment pursuant to the "fruit of the poisonous tree" doctrine because it was derived from Yahoo and/or the NCMEC's alleged constitutional violations. *See State v. Grayson*, 336 S.W.3d 138, 147 (Mo. banc 2011).

19

### a.     General Law

The Fourth Amendment to the U.S. Constitution provides individuals the right to be free from unreasonable searches and seizures.[18]  *State v. Allen*, 549 S.W.3d 516, 521 (Mo. App. S.D. 2018) (citing *State v. Lovelady*, 432 S.W.3d 187, 190 (Mo. banc 2014)); *see also United States v. Rosenow*, 50 F.4th 715, 728 (9th Cir. 2022).  The Fourth Amendment applies only to governmental action; it does not protect against intrusive conduct by private individuals or entities acting in a private capacity.  *Rosenow*, 50 F.4th at 728 (citing *U.S. v. Jacobsen*, 466 U.S. 109, 113 (1984)).  "The Constitution does, however, 'constrain[ ] governmental action by whatever instruments or in whatever modes that action may be taken.'"  *Rosenow*, 50 F.4th at 728 (bracketed alterations in original) (quoting *Lebron v. National R.R. Passenger Corp.*, 513 U.S. 374, 392 (1995)).  Accordingly, a private search or seizure may implicate the Fourth Amendment where the private party acts as an agent or instrument of the government.  *Rosenow*, 50 F.4th at 728-29 (citing *Jacobsen*, 466 U.S. at 113); *United States v. Ringland*, 966 F.3d 731, 735 (8th Cir. 2020) (citing *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 614 (1989)).

Additionally, "[i]f a private party conducted an initial search independent of any agency relationship with the government, then law enforcement officers may, in turn, perform the same search as the private party without violating the Fourth Amendment as long as the search does not exceed[ ] the scope of the private search."  *Ringland*, 966 F.3d at 736 (bracketed alterations in original) (citation and internal quotations omitted).  "This is because the private search already frustrated the person's legitimate expectation of privacy; thus, an ensuing police intrusion that stays within the limits of the private search is not a search for Fourth Amendment purposes."  *Id.*

---

[18] "Article I, section 15 of the Missouri Constitution provides the same guarantees against unreasonable search and seizures; thus, the same analysis applies to cases under the Missouri Constitution as under the United States Constitution." *State v. Oliver*, 293 S.W.3d 437, 442 (Mo. banc 2009).

### b. Yahoo Did Not Commit a Fourth Amendment Violation Under the Circumstances of this Case

In this case, Defendant claims the Fourth Amendment was implicated because Yahoo, a private party, was acting as an agent or instrument of the government when it searched his Yahoo Flickr account and seized information concerning child pornography images.

A defendant challenging a search and seizure conducted by a private party bears the burden of showing by a preponderance of the evidence that the private party acted as an agent or instrument of the government. *Rosenow*, 50 F.4th at 729 (citation omitted); *United States v. Meals*, 21 F.4th 903, 906-07 (5th Cir. 2021); *Ringland*, 966 F.3d at 735. "Whether a private party should be deemed an agent or instrument of the [g]overnment for Fourth Amendment purposes necessarily turns on the degree of the [g]overnment's participation in the private party's activities, a question that can only be resolved in light of all the circumstances." *Rosenow*, 50 F.4th at 729 (quoting *Skinner*, 489 U.S. at 614-15).

Here, Defendant cites no factual evidence in support of his argument that Yahoo was acting as a government agent or instrument in this case. Instead, Defendant relies on a statute that, (1) requires an electronic service provider such as Yahoo to send a CyberTip to the National Center for Missing and Exploited Children reporting any apparent violation of child pornography laws it discovers on its platform; and (2) has statutory penalties imposed for failing to report such content. *See* 18 U.S.C. section 2258A(a) and (e);[19] *see also Meals*, 21 F.4th at 907; *Ringland*, 966 F.3d at 736. Importantly, 18 U.S.C. section 2258A does not require electronic service providers to seek out and discover violations of child pornography laws. U.S.C section 2258A(f); *Meals*, 21 F.4th at 907; *Ringland*, 966 F.3d at 736.

---

[19] All statutory references to 18 U.S.C. section 2258A in this opinion are to the version of the statute effective from December 21, 2018 to the present.

"[A] reporting requirement, standing alone, does not transform an [electronic service provider] into a government agent whenever it chooses to scan files sent on its network for child pornography." *Ringland*, 966 F.3d at 733, 736 (original bracketed alterations omitted) (quoting *U.S. v. Stevenson*, 727 F.3d 826, 829 (8th Cir. 2013) and citing *U.S. v. Cameron*, 699 F.3d 621, 637-38 (1st Cir. 2012) and *U.S. v. Richardson*, 607 F.3d 357, 366-67 (4th Cir. 2010)). "Moreover, the statutory scheme does not so strongly encourage affirmative searches such that it is coercive. In fact, the penalties for failing to report child pornography may even discourage searches in favor of willful ignorance." *Ringland*, 966 F.3d at 736.

Based on the foregoing, Defendant has not met his burden of proving by a preponderance of evidence that Yahoo, a private party, was acting as a government agent or instrument when it searched his Yahoo Flickr account and seized information concerning child pornography images. Therefore, the Fourth Amendment was not implicated, and Yahoo did not commit a Fourth Amendment violation under the circumstances of this case. *See Rosenow*, 50 F.4th at 728-29; *Ringland*, 966 F.3d at 735; *see also Skinner*, 489 U.S. at 614; *Jacobsen*, 466 U.S. at 113; *Meals*, 21 F.4th at 906-07.

### c. The National Center for Missing and Exploited Children Did Not Commit a Fourth Amendment Violation Under the Circumstances of this Case

As previously stated, "[i]f a private party conducted an initial search independent of any agency relationship with the government, then law enforcement officers may, in turn, perform the same search as the private party without violating the Fourth Amendment as long as the search does not exceed[ ] the scope of the private search." *Ringland*, 966 F.3d at 736 (bracketed alterations in original) (citation and internal quotations omitted).

In this case, assuming *arguendo* that the National Center for Missing and Exploited Children was acting as a government agent in this case, the NCMEC did not exceed the scope of

22

Yahoo's search by merely reviewing the identical evidence – the entire contents of all suspected child pornography images on Defendant's Flickr account – that Yahoo also reviewed and placed in the CyberTip. *See id.*; *Meals*, 21 F.4th at 908 (similarly finding); *cf. United States v. Ackerman*, 831 F.3d 1292, 1305-06 (10th Cir. 2016) (finding the NCMEC exceeded the scope of AOL's search where, unlike the circumstances of this case, "AOL never opened [a defendant's] email [containing a suspected child pornography image]" and "[o]nly [the] NCMEC did that").

Moreover, to the extent the NCMEC took the additional action of geolocating Defendant's IP address to Missouri in general, this did not constitute a search to which the Fourth Amendment applied because a defendant does not have a reasonable expectation of privacy in an IP address. *See United States v. Caira*, 833 F.3d 803, 806-09 (7th Cir. 2016); *see also U.S. v. Weast*, 811 F.3d 743, 747 (5th Cir. 2016). "[C]ourts have uniformly held that subscriber information provided to an internet provider, including IP addresses, is not protected by the Fourth Amendment's privacy expectation because it is voluntarily conveyed to third parties."[20] *Weast*, 811 F.3d at 747, 747 n.10 (internal quotations omitted) (quoting *U.S. v. Christie*, 624 F.3d 558, 573 (3rd Cir. 2010) (citing, *inter alia*, *U.S. v. Perrine*, 518 F.3d 1196, 1204 (10th Cir. 2008)); *see also Caira*, 833 F.3d at 806-09; *U.S. v. Wheelock*, 772 F.3d 825, 828 (8th Cir. 2014); *United States v. Bynum*, 604 F.3d 161, 164 (4th Cir. 2010). Therefore, the NCMEC did not commit a Fourth Amendment violation under the circumstances of this case.

---

[20] We note the U.S. Supreme Court's decision in *Carpenter v. U.S.*, 138 S. Ct. 2206, 2211, 2219, 2220 (2018), a self-described "narrow" decision, holds in relevant part, (1) "when the [g]overnment accessed [cell-site location information] from [ ] wireless carriers, it invaded [the defendant's] reasonable expectation of privacy in the whole of his physical movements"; (2) "[g]iven the unique nature of cell phone location information, the fact that the [g]overnment obtained the information from a third party does not overcome [the defendant's] claim to Fourth Amendment protection"; and (3) "[t]he [g]overnment's acquisition of [ ] cell-site records was a search within the meaning of the Fourth Amendment"). Courts have declined to extend *Carpenter* to IP addresses, and we similarly decline to do so here. *See, e.g., State v. Mixton*, 478 P.3d 1227, 1234 (Ariz. 2021) ("we hold that – just as every federal court has held – the Fourth Amendment does not, in light of *Carpenter*, require a search warrant to obtain IP addresses . . ."); *see also State v. Briggs*, 283 A.3d 165, 171 (N.J. Super. Ct. Law Div. 2019) ("IP address data does not generate the privacy concerns enunciated in *Carpenter*") (underlined emphasis omitted and italicized emphasis added).

**3.      Conclusion as to Defendant's Third Point on Appeal**

Yahoo and the NCMEC did not commit a Fourth Amendment violation. Accordingly, the evidence obtained from the subsequent investigation by Missouri law enforcement is not considered the "fruit of the poisonous tree." *See State v. Grayson*, 336 S.W.3d 138, 147 (Mo. banc 2011). Because there was no Fourth Amendment violation under the circumstances of this case, the trial court did not err in denying Defendant's motions to suppress evidence of child pornography found on Defendant's Yahoo Flickr account and found on Defendant's computer. Point three is denied.

### III.      CONCLUSION

The trial court's judgment is affirmed.

_____
ROBERT M. CLAYTON III, Judge

Angela T. Quigless, P.J., and
Sherri B. Sullivan, J., concur.

24